or improper method in trying to accomplish the result. There is no satisfactory evidence that he had used this return runway before. It certainly affirmatively appears that he had not used it that morning, and it likewise appears that the position of the derrick had been recently changed.

The judgment and order should be affirmed, with costs. All concur.

---

(121 App. Div. 250)

RAPID TRANSIT SUBWAY CONST. CO. et al. v. COLER et al.

(Supreme Court, Appellate Division, Second Department. July 23, 1907.)

MUNICIPAL CORPORATIONS—USE OF STREETS—AUTHORITY TO GRANT.

> Rapid Transit Act (Laws 1891, p. 3, c. 4, as amended by Laws 1894, p. 1880, c. 752, and Laws 1900, p. 1349, c. 616), gives very extensive and general powers to the New York City board of rapid transit commissioners regarding the construction of rapid transit railways. New York City Charter Laws 1897, pp. 139, 140, c. 378, §§ 383, 391, give the borough president control in issuing permits to builders and others to use and open streets, etc. *Held* that, though the rapid transit act does not specifically give the board power to issue permits for the occupation of cross-streets by those actually engaged in constructing the rapid transit subways, for necessary purposes, such power is incidental under the act, and the board's permit is sufficient, without one from the borough authorities; the provision of Laws 1891, p. 14, c. 4, § 24, subd. 5, that "no such corporation" may acquire the use of streets, except those designated for the routes of the railway, excepting such temporary privileges as the proper authorities may grant, applying only to a corporation organized under the act to build the railway itself.

Appeal from Special Term, Kings County.

Injunction proceeding by the Rapid Transit Subway Construction Company and another against Bird S. Coler, individually and as president of the borough of Brooklyn, and another. From an order continuing a temporary injunction pending the action, defendants appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, HOOKER, and MILLER, JJ.

James D. Bell, for appellants.
George W. Wickersham, for respondents.

HOOKER, J. The question for our determination, presented by the record at bar, is purely one of power. The plaintiff Rapid Transit Subway Construction Company has contracted with the rapid transit commission to build a certain part of the system of subways now under construction, and the plaintiff Cranford & McNamee, as a subcontractor of its coplaintiff, has used, with the consent and pursuant to the permit of the rapid transit commission, parts of certain streets in Brooklyn which cross the street under which the construction is now progressing; such use, it is fairly to be assumed from the affidavits, being reasonably necessary for the prompt and proper progress of the work. The occupation of such cross-streets is without the permit of the borough president of the borough of Brooklyn, or of its commissioner of public works. These latter officials have threatened to re-

move the plaintiffs from the cross-streets occupied by them for such purposes. This action was commenced to restrain such removal, and a temporary injunction has been continued during the pendency of the action. The defendants have appealed to this court. The question is: Have the plaintiffs a right to occupy the streets they are in, for the purposes for which they are using them, without the permit of the usual borough authorities; or, in other words, is the permit of the rapid transit commission sufficient?

The rapid transit act (Laws 1891, p. 3, c. 4) bestows the most general grant of power upon the rapid transit commission when it provides (section 1) that it "shall have and exercise the specific authority and powers hereinafter conferred, and also such other and necessary powers as may be requisite to the efficient performance of the duties imposed upon the said board by this act." Under this act (section 4) the board was required to determine whether or not "it is for the interest of the public and of the city in which it is appointed that a rapid transit railway or railways for the conveyance and transportation of persons and property should be established therein," and so "to determine and establish the route or routes thereof and the general plan of construction." Section 5 required the board to transmit the plans and conclusions it adopted to the common council of the city. If approved by the common council and by any other local authority in which the exclusive supervision of any street, road, highway, or avenue which was to be used under the provisions of the law should be vested, and if a majority of property owners consented thereto, or failing that, a commission appointed by the Appellate Division of the Supreme Court should report in favor of the construction of the railroad and that report should be confirmed, then by section 6 the board was required to prepare detailed plans and specifications for the construction of such railway in accordance with the general plan of construction. "Stations and station approaches," section 6 provided, "may be under or over streets of the route or cross streets, and the board of aldermen, or other legislative body, of any such city shall have power to regulate by general or special ordinance or resolution, the erection, alteration and maintenance upon or in connection with any building used wholly or in part for station purposes, or approaches, or any and all structures or parts of structures extending over the whole or any part of any sidewalk or sidewalks adjacent thereto." The board was further empowered from time to time to alter such detailed plans and specifications, "but always so that the same shall accord with the general plan of construction; but whenever a contract shall have been made for the construction of any railway herein provided for, no such alteration shall be made by the board without the consent of the contractor and his sureties, except as liberty shall have been reserved in such contract by said board for such alteration." For the purpose of facilitating construction "and to diminish the period of occupancy of any street for the transportation of material" it was provided in section 33 that any contractor acting under a contract pursuant to this act might, with the approval of the rapid transit board, "lay upon or over the surface of any street, temporary tramways, to be used only for the removal of excavated materials or the transportation of material for use in the construction."

In 1894 the act was amended by adding sections beginning with section 34 (Laws 1894, p. 1880, c. 752); and later the act was amended (Laws 1900, p. 1349, c. 616) so as to extend its operation to the whole of the city of New York. The amendments of 1894 provided that the rapid transit board should cause the question whether the rapid transit railway should be constructed by the city and at the public expense to be submitted to general vote at the ensuing general election, and that, if the people should determine by vote that the railway should be constructed for and at the expense of the city, the board should proceed to make contracts for construction, the funds to be supplied by the board of estimate and apportionment. The scope of the amendments of 1894 was greatly to increase the powers and duties of the commission. The people determined at the polls in 1894 that the construction should be for and by the municipality, and thereupon the commission became charged, not only with the duty of laying out routes and awarding privilege of building the railway to the highest bidder, but of actually building the lines itself, and of supervising their operation.

It is true that by sections 383 and 391 of the charter of the city of New York (Laws 1897, pp. 139, 140, c. 378) the borough president has cognizance and control of the issue of permits to builders and others to use and open streets, and to those who seek to interfere with the pavement or disturb the surface of streets for the usual purposes for which these acts are done; and it is likewise true that there is no specific language in the rapid transit act which in terms gives to the rapid transit commission the power to issue permits for the occupation of cross-streets by those actually engaged in the construction of the subway for necessary purposes. We think, however, that the whole tenor of the act is to endow the commission with all powers necessary to effectuate the speedy, proper, and adequate construction of the subway. The commission is created and is recognized as a distinct municipal agency, whose acts, authorized by specific enactment or by necessary implication, are as binding upon the municipality as authorized acts of the ordinary city officials. As we have observed, the Legislature of 1894, in amending the act by the addition of section 34 and following, has imposed upon the commission larger obligations, and incidentally larger powers. By section 34 it was provided that, in case the people should have determined by vote that a rapid transit railway should be constructed for and at the expense of the city, it should be the duty of the board either to proceed with the construction of such railway or railways and to provide for the operation of the same, or to change and modify routes, or to adopt additional ones, etc.; that as soon as the requisite consents shall have been obtained for any rapid transit railroad, and the detail plans and specifications prepared as provided in section 6, "the said board, for and in behalf of said city, shall enter into a contract with any person, firm or corporation, which in the opinion of said board, shall be best qualified to fulfill and carry out said contract, for the construction of such road or roads upon the routes and in accordance with the plans and specifications so adopted, for such sum or sums of money, to be raised and paid out of the treasury of said city, as hereinafter provided, and on such terms and conditions, not inconsistent with the aforesaid

plans and specifications, as said board shall determine to be best for the public interests. * * * The said board may by any such contract determine when and how the work of construction of the rapid transit railroad or railroads included therein shall proceed." Section 39 provides:

"For the purpose of constructing or operating any road for the construction and operation of which a contract shall have been made by the board of rapid transit railroad commissioners, including necessary stations and station approaches, or for the purpose of operating or securing the operation of the same. * * * *"

The board, for and in behalf of the city, may acquire by conveyance or by condemnation "any real estate and any rights, terms and interest therein, any and all rights, privileges, franchises and easements, whether of owners or abutters, or others to interfere with the construction or operation of such road or to recover damages therefor, which, in the opinion of the board, it shall be necessary to acquire or extinguish for the purpose of constructing and operating such road free of interference or right of interference." By section 38 the board is empowered to agree with the contractor in any such contract "upon changes in and modifications of said contract, or of the plans and specifications upon which said road or roads is or are to be constructed," but with the limitation that the routes and general plan provided for in section 5 shall not be changed or modified without the consent and authorization provided for in that section, nor shall the minimum rental to be paid to the city for the use of the road be reduced beyond that provided for in the statute.

It is apparent, from an examination of the sections to which we have referred and of other provisions contained in the act, that it was the intent of the Legislature to confer upon the commission all of the necessary powers properly to construct the subway, and this, without the concurrent action of the ordinary municipal authorities, except where such action was specifically required by the act. The power to grant a valid permit to a contractor or subcontractor to occupy an adjacent part of cross-streets where such occupation is necessary in the prosecution of the work is, we think, an incidental power which the commission possesses under the act; and the mere fact that this specific power is not among those enumerated by the Legislature does not alter the case, for, if the act had attempted in detail to enumerate all of the specific powers the commission might have, it would necessarily have partaken of the "prolixity of a legal code."

It is urged on behalf of the appellants that subdivision 5 of section 24 of the act reserves to the ordinary municipal authorities the right to grant permits for the occupation of streets, such as the plaintiffs are indulging in. That subdivision provides:

"No such corporation shall have the right to acquire the use or occupancy of public parks or squares in such county, or the use and occupancy of any of the streets or avenues, except such as may have been designated for the route or routes of such railway, and except such temporary privileges as the proper authorities may grant to such corporations to facilitate such construction."

This subdivision deals with the right of a corporation which has bid for the right to build the railroad itself, under the provision in the act of 1891. The act, as it was passed in that year, did not in any wise contemplate the construction of the railway by and for the city, and the powers of the commission under the original act were mainly the laying out of a route and the designation of a corporation organized for that purpose under the act which might construct the railway. Under the provision of the amendment of 1894, however, the subway in whose construction the plaintiffs are now assisting is being built for and by the city, and the rapid transit commission is at the head of the enterprise, pursuant to the larger powers granted by the amendments of 1894. It must be apparent, therefore, that the provisions of subdivision 5 of section 24 but related to a corporation organized under the act for the purpose of building the railway itself, and cannot by any implication whatever refer to the rapid transit commission, which is what such a corporation never could have been, namely, a properly constituted and distinct municipal agency.

The order continuing the injunction during the pendency of the action should, therefore, be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.

---

(120 App. Div. 684)

### BURKE v. MANHATTAN RY. CO. et al.

(Supreme Court, Appellate Division, First Department. July 15, 1907.)

EASEMENTS—GRANTS—PRESCRIPTION—PRESUMPTIONS.

Where a railroad was built in a street, and subsequently an action by the owners of the fee of land abutting on the street to restrain the railroad from maintaining and operating its road in the street was settled, the owners conveying to the railroad all their interest in the street, the recognition by the railroad of the interest of the owners was not a recognition of the rights of tenants of the property, nor did it tend to rebut the presumption of a grant by the tenant of his interest in the street arising from adverse possession by the railroad for 20 years.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Easements, § 84.]

Appeal from Special Term, New York County.