(96 Misc. Rep. 52)

## CITY OF NEW YORK v. WOODHAVEN GASLIGHT CO.

(Supreme Court, Special Term, Kings County.   June, 1916.)

1. GAS ☞7(2)—LAYING GAS MAINS—NEW YORK CHARTER.

By Greater New York Charter (Laws 1901, c. 466) §§ 383, 391, the borough president has the power to issue permits to open streets, and by section 469 the commissioner of water supply, gas, and electricity has power to regulate and control the laying of gas mains, etc., but not power to issue a permit to open a street to lay gas mains, though they cannot be laid without his approval.  To lay mains a gaslight company must get the permission of the borough president to open the street, and also get that of the commissioner of water supply, gas, and electricity as to the location and manner of laying the mains; neither the president nor the commissioner being able to prescribe the conditions upon which the other may grant his permission.

[Ed. Note.—For other cases, see Gas, Cent. Dig. § 2;  Dec. Dig. ☞7(2).]

2. MUNICIPAL CORPORATIONS ☞682(4)—LAYING GAS MAINS—IMPOSITION OF CONDITION.

The commissioner of water supply, gas, and electricity, in granting permission to a gaslight company as to the location and manner of laying its pipes, having power to regulate and control the laying of gas mains, can properly impose any reasonable condition, as that the company shall pay the reasonable cost of inspection of the work.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1470;  Dec. Dig. ☞682(4).]

Action by the City of New York against the Woodhaven Gaslight Company.  Plaintiff's motion for injunction granted.

Lamar Hardy, Corp. Counsel, of New York City (Edward S. Malone, of New York City, of counsel), for plaintiff.

Cullen & Dykman, of Brooklyn (Jackson A. Dykman, of Brooklyn, of counsel), for defendant.

CROPSEY, J.  The city seeks to enjoin the defendant from opening a public street in the borough of Queens for the purpose of installing, repairing, or maintaining any gas mains therein not now in use by the public.  The defendant has not obtained from the department of water supply, gas, and electricity of the city any permit for the doing of such work, and the absence of such permit or consent is the basis of this action.  A permit, however, has been granted by the borough president of Queens to the defendant to open the street in question for the purpose of relaying its main and service pipes.  This permit provides that the work shall be done under such reasonable regulations as the commissioner of water supply, gas, and electricity may prescribe, except that the holder of the permit shall not be required to pay for the services of any inspector not appointed under the jurisdiction of the borough president.

[1] The duties and powers of the borough president and of the commissioner in question are clear and separate.  Neither can restrict or circumscribe the other.  The borough president has the power to issue permits to open the streets.  Charter, §§ 383, 391; Rapid Transit

Subway Con. Co. v. Coler, 121 App. Div. 250, 253, 105 N. Y. Supp. 824. The commissioner has the power to regulate and control the laying of gas mains, etc. Charter, § 469; Ghee v. Northern Union Gas Co., 158 N. Y. 510, 522, 525, 53 N. E. 692.

The claim of the corporation counsel that the commissioner also has the power to issue a permit to open the street for the purpose of laying gas mains seems not to be justified. This is clearly indicated by the provisions of the charter, which expressly give the commissioner such power where electric mains or conduits are to be located under the city streets, but do not give it for the laying of gas mains (section 469); and the fact that the commissioner has no such power with reference to the laying of gas mains has been expressly decided (People ex rel. Q., B., G. & El. Co. v. Connolly, 89 Misc. Rep. 555, 153 N. Y. Supp. 721). But this question seems really to be unimportant.

The commissioner does have control over the laying of gas mains and they cannot be laid without his approval. Ghee v. Northern Union Gas Co., 158 N. Y. 510, 522, 525, 53 N. E. 692. Whether he in fact can issue a "permit" is really immaterial, although it would seem that that is what it amounts to, for clearly the laying of the gas mains cannot be done without his permission, and it is subject to his approval.

In order to lay its mains, the defendant must get the permission of the borough president to open the street, and it must also get the permission of the commissioner as to the location and manner of laying the pipes. Either permission, without the other, serves no purpose. Both must be secured before the work can legally be done. People ex rel. Q., B., G. & El. Co. v. Connolly, 89 Misc. Rep. 555, 153 N. Y. Supp. 721; Ghee v. Northern Union Gas Co., 158 N. Y. 510, 525, 53 N. E. 692. The orderly way would seem to be for the gas company first to get the commissioner's permission and then the permission of the borough president. The permit from the latter alone is ineffective, and the mains cannot be laid under it without the permission of the commissioner. Nor can either the borough president or the commissioner prescribe the conditions upon which the other may grant his permission.

[2] The commissioner, having the power to regulate and control the laying of gas mains, can properly impose any reasonable condition, and inspection is one. Schummacher v. City of N. Y., 166 N. Y. 103, 108, 109, 59 N. E. 773; Rapid Transit Subway Con. Co. v. Coler, 121 App. Div. 250, 255, 105 N. Y. Supp. 824. The requirement that the gas company pay the reasonable cost of the inspection is a reasonable condition to impose. People ex rel. Con. Subway Co. v. Monroe, 35 App. Div. 542, 547, 548, 83 N. Y. Supp. 382, affirmed 176 N. Y. 567, 68 N. E. 1122. This does not mean, however, that the gas company must pay for inspectors who do not inspect.

The papers presented on this application reveal a serious question. The gas company present affidavits showing that the commissioner's inspectors have not worked, or have worked but little, although the gas company has been charged by the commissioner for the full pay of these inspectors. If the inspectors did not inspect, of course the gas company should not be required to pay, and the city would not be getting protection it is entitled to have, which comes from a proper in-

spection. The gas company's papers show that much of its work, done during the months of March, April, and May, was wholly uninspected by any representative of the commissioner; that one of the inspectors for whose services it has been charged spent only 19 hours during those 3 months in actual work, the days, hours, and months being given; and that the other inspector, for whom also it has been charged, never appeared on the work during those months. The daily reports of these inspectors show they worked 8 hours each day, except Saturdays. They show an arrival at 8 a. m., a leaving at 12 m., an arrival again at 1 p. m., and a leaving at 5 p. m. This is the invariable showing, and a regularity such as this would indicate would seem suggestive of inaccuracy.

But these daily reports must be inaccurate upon the inspector's own affidavit, for he says he inspected several jobs almost every day, while the majority of the reports show the contrary; and his affidavit also says he spent much time trying to find out where the work was being done, although his reports show him actually inspecting all day. The other inspector, who according to the affidavits of the defendant did not appear on any job during those 3 months, spent, according to his daily reports, considerable time on "general inspection," but of what or where is not stated.

This inspector says he is a supervising inspector. As his entire pay has been charged to the defendant, he must have been supervising only the inspector engaged upon defendant's work, namely, the one inspector who seems to have been charged with that duty; that is, it seems there was one inspector to inspect the work and this additional inspector to inspect him. There is a conflict in the affidavits, but the situation is one which seems to call for some action on the part of those interested. It is to be hoped that the daily reports of these inspectors are of more value to the head of their department than they seem to be on their face.

As the defendant cannot lay its gas mains without the permission of the commissioner, and as that admittedly has not been obtained, the motion must be granted. The defendant will be restrained from laying its mains unless and until the approval of the commissioner is obtained, to the giving of which approval he may attach any reasonable condition, including the requirement that the defendant pay not to exceed $100 a month for each inspector for services actually rendered in connection with defendant's work.