MORTIMER NEVINS

*v.*

THE CITY OF PEORIA.

1. CITIES — HIGHWAYS — *how far a city is responsible for the manner of its exercise of the power to grade and drain the streets.* A city has absolute control over the grade of its streets, and can make the grade light or heavy, it can elevate or lower it at pleasure, and the owners of adjacent lots cannot call it to account for errors of judgment in these respects, or demand damages because they may incur inconvenience or expense in adjusting the level of their own premises to that of the street for the purpose of ingress and egress. A city is the owner of the streets, and is given power to grade them.

2. But a city has no more power over its streets than a private individual has over his own land, and it cannot, under the plea of public convenience, be permitted to exercise that dominion to the injury of another's property in a mode that would render a private individual responsible in damages, without being responsible itself. The same law that protects the right of property of one private individual against invasion by other individuals, must protect it from similar aggression on the part of municipal corporations.

3. A city may elevate or depress its streets as it thinks proper, but if, in so doing, it turns a stream of mud and water upon the grounds and into the cel-

Statement of the case.

lars of one of its citizens, or creates in his neighborhood a stagnant pond that brings disease upon his household, it should not be excused from paying for the injuries it has directly wrought.

4. And if it should become necessary for the interest of the public, in the process of grading or drainage of the streets, that the lot of an individual shall be rendered unfit for occupancy, either wholly or in part, the public should pay for it to the extent to which it deprives the owner of its legitimate use.

5. The constitutional provision that private property shall not be taken for public use without due compensation, applies as well to secure the payment for property partially taken for the use or convenience of a street, as when wholly taken and converted into a street. The question of the degree to which the property is taken, makes no difference in the application of the principle. Private rights are never to be sacrificed to public convenience or necessity, without full compensation.

6. ACTION — *remedy of the injured party in such case.* And it appears, that, for injuries done to the property of an individual in the process of grading and drainage of a street, by turning a stream of mud and water upon his premises, or by creating in the immediate neighborhood of his dwelling an offensive and unwholesome pond, he may have his action on the case against the city, and it must respond in damages.

7. PARTIES — *who shall be liable in such case — application of the rule of respondeat superior.* Where a city has work done by contract, and a servant of the contractor does something not authorized by the city, such as improperly leaving open a drain at night, the city would not be liable, even though, by the terms of the contract, a general supervision is retained over the work.

8. But if, on the other hand, the acts which caused the injury were done under and in consequence of the direction of the city, then the city is to be regarded as the superior, and responsible as such, although it does the work by contract.

APPEAL from the Circuit Court of Peoria county; the Hon. S. L. RICHMOND, Judge, presiding.

This was an action on the case brought in the court below, by Mortimer Nevins against The City of Peoria.

The cause was tried before the court and a jury, and a verdict returned for the defendant, and a judgment was entered accordingly. The plaintiff thereupon took this appeal.

So much of the facts of the case as is necessary to an understanding of the decision will be found in the opinion of the court.

The principal question presented arises out of instructions given to the jury on behalf of the defendant, which assume that a city is not liable for any injury done to individual property holders by grading the streets of the city, even though the injury could have been avoided by the use of proper care in the construction of culverts, gutters and other means for controlling the flow of water.

The plaintiff below, the appellant here, controverts that proposition.

Mr. H. GROVE and Messrs. COOPER & Moss, for the appellant, presented these points :

The city of Peoria is a municipal corporation, with large powers conferred upon it for the public good, but to be exercised with due regard to private rights and property; and for negligence, unskillfulness, careless or wanton disregard of private rights and interests in the exercise of any of its powers, from which injury results to persons or property, it is liable just as individuals. *Lacour* v. *Mayor of New York*, 3 Duer, 415 ; *Mayor of New York* v. *Bailey*, 2 Denio, 333 ; *Verley* v. *City of Joliet*, 35 Ill. 58.

The city owns the streets within the corporate limits, and is responsible for the manner of their improvement; and while it may be discretionary with it when any street shall be repaired or any improvement made, or whether the same shall be done at all, yet, when any such work is undertaken and actually entered upon, the city must see to it that it is done in a reasonable, proper and skillful manner, and with due diligence carried on to completion; and if, for want of proper skill and care in the mode of doing the work, or reasonable diligence in carrying it on to completion, individuals are damaged, the city is responsible. *Lacour* v. *Mayor, etc.*, 3 Duer, 416 ; *Rochester White Lead Co.* v. *City of Rochester*, 3 Comst. 469 ; *The City of Dayton* v. *Pease*, 4 Ohio St. 80 ; *City of Pekin* v. *Newell*, 26 Ill. 323 ; *Roberts* v. *City of Chicago*, id. 251 ; *Allen* v. *City of Decatur*, 23 id. 334 ; *Ross* v. *City of Madison*, 1 Carter, 281 ; *McCombs*

v. *Town Council of Akron*, 15 Ohio, 474; *Rhodes* v. *Cleveland*, 10 id. 159; *Thayer* v. *City of Boston*, 19 Pick. 511; *Stetson* v. *Faxon*, id. 147; *Barron* v. *Mayor, etc., of Baltimore*, 2 Am. Jur. 203; 7 Ohio St. 459.

Municipal corporations, any more than individuals, cannot with impunity create or keep up nuisances, whereby the health of people living around is endangered. *Chicago* v. *Robbins*, 2 Black, 418; *Clark* v. *Fry*, 8 Ohio St. 359; *Ellis* v. *Sheffield Gas Consumers' Co.*, 2 Ellis & Black. 75; Eng. C. L. p. 767; *People* v. *Corp. of Albany*, 11 Wend. 543; *Storrs* v. *The City of Utica*, 19 N. Y. 105; *Stetson* v. *Faxon*, 19 Pick. 147; *Thayer* v. *City of Boston*, id. 511.

The city of Peoria had no right to interfere with and obstruct the natural and customary flow of the water from the high grounds above plaintiff's premises, without providing some safe and competent outlet for it to pass off. And when it did undertake to divert its regular and customary flow, it was bound absolutely so to control and manage it, that injury would not result to individuals; and this entirely independent of any plan for public improvement within the city which the common council might see fit in its wisdom to adopt. *Rochester White Lead Co.* v. *City of Rochester*, 3 Comst. 465; *Ross* v. *City of Madison*, 1 Carter (Ind.) 281; *Allen* v. *City of Decatur*, 23 Ill. 334; *St. Louis, Alton & Chicago Railroad Co.* v. *Dalby*, 19 id. 370.

The work in this case was done by contract, but the city, not the contractor or his servants, is liable. The contract relates to the price per yard to be paid for the work, time and mode of payment, and within which the work shall be done. Next, they provide expressly that it shall be done under the supervision and direction of the city engineer and surveyor, and reserve the right to the city to annul the contract if the work is not prosecuted to satisfaction. It would seem difficult to frame a case where the doctrine *respondeat superior* is more applicable. Besides, it is believed not to be the law that the city, in the repair of streets, or the prosecution of any public work, can surrender itself and the public and private interests

in its charge, to the tender mercies of contractors, whether responsible or irresponsible, and shirk off all responsibility for their acts. If the city has not reserved a right of direction and control, that is itself a plain breach of duty, for which it should be held all the more accountable. *Southwick* v. *Estes*, 7 Cush. 385 ; *Phila. & Reading Railroad Co.* v. *Derby*, 14 How. 469 ; *Storrs* v. *City of Utica*, 19 N. Y. 105 ; Angell & Ames on Corporations, 464, § 388, p. 463, § 387; see *Lesher et al.* v. *Wabash Navigation Co.*, 14 Ill. 87; *Hinds et al.* v. *Wabash Navigation Co.*, 15 id. 77.

Mr. M. WILLIAMSON, for the appellee.

The evidence shows that the work was all done by contractors, under the supervision of the city engineer. If the work was done by a contractor, then the city would not be liable for any negligence or unskillfulness in the performance of the work. This principle is too well settled to admit of controversy. The case of *Bush* v. *Steinman* holding an opposite doctrine in England was long since overruled, and in fact was never regarded as law there. *Quarnam* v. *Burnett*, 6 M. & W. 499 ; *Rapson* v. *Cubit*, 9 id. 710 ; *Milligan* v. *Wedge*, 12 A. & E. 737 ; *Allen* v. *Hayward*, 7 Q. B. 960 ; 1 E. L. and E. 447 ; 8 id. 479 ; 16 id. 442 ; 30 id. 167 ; 32 id. 366 ; 37 id. 495.

This rule is equally well settled in this country. *Clark* v. *Vt. & Canada R. R. Co.*, 28 Vt. 107 ; *Hilliard* v. *Richardson*, 3 Gray, 349 ; *Barry* v. *City of St. Louis*, 17 Mo. 121; *Blake* v. *Farris*, 1 Seld. 48 ; *Pack* v. *Mayor, N. Y.*, 4 Seld. 223 ; 2 Mich. 368 and 528 ; 2 Metc. 353 ; 2 E. D. Smith, 254.

The same doctrine is also held in Pennsylvania. In the case of *Painter* v. *Mayor, Aldermen and Citizens of Pittsburgh*, 46 Pa. St. 221, the court, after a thorough examination of the authorities, both English and American, say the law is well settled both in England and this country, that a municipal corporation is not liable for the negligence or unskillfulness of its contractors, and the rule is established in *Kelly* v. *The Mayor, etc., of New York*, 1 Kern. 435 ; *Hovey* v. *Mayo*,

43 Maine, 334; 32 N. Y. 495; *Wilson* v. *The Mayor of New York*, 1 Denio, 595; *Child* v. *City of Boston*, 4 Allen, 51.

But if the proposition, that where the work is done by a contractor, the city is not liable, is not correct, still, in this case, the city cannot be held responsible.

The city was in the exercise of its powers for a purely public purpose, for a governmental purpose, and as a part of the government, and in the exercise of such powers it enjoys the exemption of government from responsibility for its own acts and the acts of its officers deriving their authority from the sovereign power. *Vincent* v. *Sharp*, 9 La. An. 462; 17 Mo. 128; *The Mayor, etc., of Baltimore* v. *Root*, 8 Ind. 102; *Hawthorn* v. *City of St. Louis*, 11 Mo. 59; *Mills* v. *The City of Brooklyn*, 32 N. Y. 489; *Wilson* v. *The Mayor, etc., of New York*, 1 Denio, 596; *City of St. Louis* v. *Gurno*, 12 Mo. 418; *Mayor of Philadelphia* v. *Randolph*, 4 Watts & Serg. 514; *Greer* v. *The Borough of Reading*, 9 Watts, 382; *The City of Vincennes* v. *Richards*, 23 Ind. 381; *Macy* v. *The City of Indianapolis*, 17 id. 268; *Snyder* v. *The President, etc., of Rockport*, 6 id. 237; *City of Lafayette* v. *Spencer*, 14 id. 389; 16 id. 441; 4 Green (Iowa), 47; *Radcliffe's Executors* v. *The Mayor and Common Council of Brooklyn*, 4 Comst. 196.

Mr. Justice Lawrence delivered the opinion of the Court:

In 1861, the city of Peoria caused the grade of a part of Main street, running along the bluff, to be raised, and some other work to be done, for the purpose of directing the flow of water from the west side of Main street, which was its natural channel, to the east side, and through a new channel to the river, thus improving its drainage. The appellant had, at that time, a water-cure establishment in operation on the east side of this part of Main street, and he claims that the work undertaken by the city was badly and carelessly done and never completed, and that, in consequence thereof, his house and grounds were flooded at every considerable rain with mud and water, and that a stagnant pond, covering from one to two

acres, was formed within a short distance from his house, rendering it unhealthy, and ruining his business. To precisely what extent the proof shows the plaintiff to have been injured, or on what basis his damages should be assessed, if assessed at all, are questions which have not been discussed by counsel, nor considered by the court. They are immaterial on the present record. On the trial of this cause, which was an action on the case brought against the city for these alleged injuries, the court refused all the instructions asked by the plaintiff, and gave all those asked by the defendant, and the jury found a verdict of not guilty. The plaintiff's instructions are based upon the theory, that if the city, by want of proper care, skill or diligence, has done him an injury in grading its streets, it must respond in damages. The defendant's instructions assume that the city is not liable for any injury done to individual property-holders by grading the streets, even though the injury could have been avoided by the use of proper care in the construction of culverts, gutters, and other means for controlling the flow of water. One of these instructions was as follows :

" 7th. If the water, by reason of the grade of a street being raised, overflows individual premises, the city would not be liable for damages on account of such overflow, or because a pond of water was formed upon the premises."

This instruction places individual property, so far as relates to the grading or drainage of streets, at the mercy of municipal power. It embodies a doctrine not without the color of authority in adjudged cases, but one to which we can never subscribe. That a city has absolute control over the grade of its streets, that it can make the grade light or heavy, that it can elevate or lower it at pleasure, and that the owners of adjacent lots cannot call it to account for errors of judgment in these respects, or demand damages because they m ― ' cur inconvenience or expense in adjusting the level of th ʍwn premises to that of the street, for the purpose of ing . and egress, are propositions not to be denied. The cit ' the owner of the streets, and the legislature has given it ' r to

grade them.   But it has no more power over them than a private individual has over his own land, and it cannot, under the specious plea of public convenience, be permitted to exercise that dominion to the injury of another's property in a mode that would render a private individual responsible in damages, without being responsible itself.   Neither State nor municipal government can take private property for public use without due compensation, and this benign provision of our Constitution is to be applied by the courts whenever the property of the citizen is invaded, and without reference to the degree.   We can solve more easily and safely questions of this character if we take pains to free our minds from the false notion that a municipality has some indefinable element of sovereign power which takes from the property of the citizen, as against its aggressions, the protection enjoyed against the aggressions of a natural person.   Let us see then what are the rights of co-terminous land owners as against each other.

A man cannot do any thing upon his own soil, under the plea of ownership, which amounts to a nuisance and works injury to his neighbor, but within that limit he may do whatever his whim may dictate.   He may excavate to any depth, or raise the surface to any height, and the neighboring owner has no right to complain, because his enjoyment of his own lot is not thereby prejudiced.   Even if a building erected by me near the boundary of my lot is injured or endangered by an excavation made by my neighbor in his premises, I cannot complain, because I have no right to the use of his soil for the support of my building.   Whether he has a right to excavate in such manner as to cause the soil itself to fall from my lot into his, is a question upon which the authorities are not agreed.   Comyn's Dig. Action on the case for nuisance, C; 2 Rolle's Ab. Trespass I, pl. 1; *Partridge* v. *Scott*, 3 Mees. & W. 220; *Peyton* v. *Mayor, et*   *of London*, 9 B. & C. 725; *Thurston* v. *Hancock*, 12 Mass   ; *Wyatt* v. *Harrison*, 3 B. & Ad. 871; *Lasaba* v. *Holb*   4 Paige, 169; *Radcliffe* v. *The Mayor, etc.*, 4 Comst.

This rule arises fr   e principle, that one may do what he

thinks proper with his own land, and I have no right to build my house in such a situation as to require the land of my neighbor for its support.

The same rule applies to corporations. A city owns the streets for the use of the public, and has the right to grade them in any manner the representatives of the public may deem conducive to its interests. It is not liable for errors of judgment, and if in the process of grading it leaves private property many feet below or many feet above the surface of the street, it is free from all claim for damages on this account, for precisely the same reason that a private person is exempt under similar circumstances.

But suppose my neighbor, in excavating or elevating his lot, turns a stream of water which passes through his ground, so as to cause it to pass through mine. Here the law gives me an action, for, by means of this stream, he has virtually entered upon my premises and deprived me, to that extent, of their use. The difference between this and the other case is palpable. In that case my possession and enjoyment of my lot were not disturbed, except through my own folly in building my house when it would require my neighbor's soil to support it. But in this instance I am prejudiced in the enjoyment of my lot in its natural condition and without any agency of my own. This enjoyment the law secures to me. My neighbor has no more right to send a stream of water through my premises, than he has to come upon them in person and dig a ditch, or deposit upon them a mound of earth. 3 Kent's Com. p. 440. But the law goes further than this. My neighbor has not the right to excavate his soil in such manner as to create a stagnant and offensive pond, so near my premises as to be a private nuisance by rendering my house unhealthy. He cannot use his property for a purpose that will prevent my enjoyment of mine. 3 Blackst. Com. 217.

The same law that protects my right of property against invasion by private individuals, must protect it from similar aggression on the part of municipal corporations. A city may elevate or depress its streets, as it thinks proper, but if, in so

doing, it turns a stream of mud and water upon the grounds and into the cellars of one of its citizens, or creates in his neighborhood a stagnant pond that brings disease upon his household, upon what ground of reason can it be insisted, that the city should be excused from paying for the injuries it has directly wrought?

It is said that the city must grade streets and direct the flow of waters as best as it can for the interests of the public. Undoubtedly, but if the public interest requires that the lot of an individual shall be rendered unfit for occupancy, either wholly or in part, in this process of grading or drainage, why should not the public pay for it to the extent to which it deprives the owner of its legitimate use? Why does not the constitutional provision apply as well to secure the payment for property partially taken for the use or convenience of a street, as when wholly taken and converted into a street? Surely the question of the degree to which the property is taken can make no difference in the application of the principle. To the extent to which the owner is deprived of its legitimate use and as its value is impaired, to that extent he should be paid.

There is much conflict of authority upon this question, and those courts which have taken a view different from our own, rest their conclusions in part upon the doctrine of public necessity, and the importance of preserving unimpaired, for purposes of public improvement, the efficiency of municipal corporations. In our opinion, the theory that private rights are ever to be sacrificed to public convenience or necessity, without full compensation, is fraught with danger, and should find no lodgment in American jurisprudence. To prevent this was the object of some of the most important of our constitutional guaranties. The property of the majority who control the government is in no peril; it is that of a feeble minority which is in danger, and whenever that is sought to be taken in a time of peace, under pretense of public necessity or convenience, the owner must find protection in the courts, or our institutions have failed of their great purpose — the complete

security of private rights. It is undoubtedly important, as urged in the argument, that our cities should improve rapidly, and be able to carry onward large systems of drainage and grading, but, in the attainment of these ends, they cannot be permitted to sacrifice the property of the humblest citizen without compensation. Neither is it true that the rule we lay down will interfere with the growth of cities, as the expense of grading is not very largely increased by the construction of proper gutters and culverts for the flow of water.

The strongest case cited in behalf of the city is *Wilson* v. *The Mayor, etc., of New York*, 1 Denio, 597. The same question was presented by that case as by the present, and the court held the action would not lie. The ground of the decision was, that, in raising the grade, the city was only exercising a legal power given it by the legislature over the streets, and would not, therefore, be responsible for resulting damages to individuals, which would fall under that most unsatifactory of all legal phrases, *damnum absque injuria.* With great respect for that court we must be permitted to say, the reasoning seems to us very inconclusive. Undoubtedly, a city has power to grade its streets, but the mode in which the power is to be exercised, in reference to the rights of others in the enjoyment of their property, is limited in the same way, and to the same extent as the power of a private person in the use of his property, unless the city calls to its aid the right of eminent domain, and if it does that, the right is to be exercised on the making of compensation as required by the Constitution. This case in 1 Denio was quoted approvingly by the court in *Mills* v. *The City of Brooklyn*, 32 N. Y. 489, although in the latter case the question was merely as to the obligation of the city to furnish drainage for water collecting on a lot from the natural conformation of the ground — a question wholly different from the one at bar. But even in New York the courts go far to obviate the practical harshness of this principle, by requiring a city, in making its improvements, to use great care, and adopt all reasonable methods to prevent injury to private property. Thus, in the *Rochester White Lead Co.* v. *The City of*

*Rochester*, 3 Comst. 468, the city was held liable for injuries done by the overflow of water in consequence of the insufficient size of a culvert. The court say, quoting the language of Nᵣ LSON, Ch. J., in *Furze* v. *The Mayor, etc., of New York*, 3 Hill, 612, "if we concede that the exercise of the power was in the first instance optional on the part of the corporation, yet, having elected to act under it, they must be held responsible for a complete and perfect execution." So, in *Lecour* v. *The City of New York*, 3 Duer, 417, the city, in grading Thirtieth street, turned the flow of the water from Third avenue to Second avenue, in such manner that it collected against the plaintiff's building and undermined his wall. The court held the city liable, and say, "the defendants derive no exemption from responsibility for the manner in which they have carried out the improvement or grading of Second avenue and Thirtieth street, by reason of their possessing, in respect to the improvement itself, a discretionary or judicial power; such discretion ceased to act as a shield of protection, when it reached its own limit, which was at the passage of the ordinance for the improvement; all, after that, was ministerial, and the only question is whether they have so negligently performed the latter duty as to work an injury to the plaintiff's premises."

So in the *Mayor, etc., of New York* v. *Bailey*, 2 Denio, 445, Chancellor WALWORTH, in voting in the Court of Errors to affirm the judgment of the court below, said he did so "on the ground that the dam was the property of the corporation, and that such corporation was legally bound to see that its corporate property was not used by any one so as to become noxious to the occupiers of property on the river below." The action was for injuries resulting from the breaking of a dam constructed by the city, across the Croton river.

In *Stetson* v. *Faxon*, 19 Pick. 158, a case itself turning upon a different point, the Supreme Court of Massachusetts cite in terms of marked approbation the opinion of the court in *Baron* v. *The Mayor and City Council of Baltimore*, as reported in 2 Am. Jur. 203 . he plaintiff in this case owned a wharf in the

harbor of Baltimore, and the city directed a stream of water from
its natural channel to a point near the wharf, which caused a
deposit of sand and injured the value of the wharf by dimin-
ishing the depth of water.   It was contended by the city that
it was a public corporation, acting within the scope of its au-
thority, and with care and circumspection.   The Supreme Court
of Massachusetts speak of the opinion of ARCHER, Ch. J., as
"very clear and able," and say that it "proceeds upon the
ground that it was a measure which was necessary and bene-
ficial to the city," but it was held they should not carry it into
effect without compensating the individuals whose property
was thereby sacrificed.   The defendants, said the chief justice,
are trustees for the public interests for their own benefit, and
ought to answer as an individual to the person at whose ex-
pense they are benefited.

The case of *Rhodes* v. *The City of Cleveland*, 10 Ohio, 159,
was, like the case at bar, a suit brought against the city for
cutting ditches in such a manner as to overflow the plaintiff's
land.   The ordinary defense was made, that the city was only
exercising its lawful powers.   The court held that the action
was well brought, saying, "if an individual, exercising his
lawful powers, commit an injury, the action on the case is a
familiar remedy; if corporations, acting within the scope of
their authority, should work wrong to another, the same princi-
ple of ethics demands of them to repair it, and no reason
occurs to the court why the same remedy should not be applied
to compel justice from them."   In the subsequent case of
*McComb* v. *The Town of Akron*, 16 Ohio, 475, the same court
went still further, and held the corporation liable to the owner
of a lot, for the injury to the lot, arising from lowering the
grade of the street, the injury consisting merely in the fact
that the lot was left too far above the grade of the street.   We
do not perceive how this decision can be sustained, as a private
individual would not be liable for an injury of that character.
There was a dissenting opinion in that case, in which the dis-
senting judge indorsed the case in 10th Ohio.   This question
again came before that court in *Crawford* v. *Village of Dela-*

*ware,* 7 Ohio St. 470, and it was held, that, if erections are made on a lot in accordance with an established grade, and the grade is afterward altered, and the owner of the building is thereby injured by having his property made difficult of access, he would be entitled to compensation, though a different rule would apply to unimproved lots.

Other authorities have been cited by counsel which it is not necessary to quote. It must be admitted that the rule laid down by the courts of New York has been quite generally adopted. Thus the cases divide themselves into two classes, one, and the larger class, holding that a city is only held to reasonable care and skill in grading its streets, and that if these are used, it can shield itself under its corporate powers from liability to individuals, the other holding that a city in the management of corporate property must be held to the same responsibilities that attach to individuals for injury to the property of others. We cannot doubt that the latter is the sounder rule. We are unable to see why the property of an individual should be sacrificed for the public convenience without compensation. We do not think it sufficient to call it *damnum absque injuria.* We know our Constitution was designed to prevent these wrongs. We are of opinion, that, for injuries done to the property of the appellant in the case before us, by turning a stream of mud and water upon his premises, or by creating in the immediate neighborhood of his dwelling an offensive and unwholesome pond, if the jury find these things to have been done, the city of Peoria must respond in damages.

It is also urged by the appellee that the liability, if there is any, attached to the contractor and not to the city. The rule of *respondeat superior* is simple in itself, but sometimes difficult of application, where there are intermediate contractors, from the doubt as to which person is to be considered as the master in the given case. Where a city has work done by contract, and a servant of the contractor does something not authorized by the city, such as improperly leaving open a drain at night, the city would not be liable even though by the terms of the

contract a general supervision is retained over the work. This is substantially the principle laid down in the cases cited by the appellee's counsel. But if on the other hand the acts which caused the injury were done under and in consequence of the direction of the city, then the city is to be regarded as the superior, and responsible as such, although it does the work by contract. Hence, the 8th instruction asked for the plaintiff should have been given. It was as follows:.

" 8. That if it appears that defendant let out the job of filling up Main street to other persons, at so much per yard, the soil to be furnished by defendant, and the grading to be done under supervision of the defendant's engineer, and if said engineer went upon the ground with such other persons, and pointed out to them where to take the soil from and where to put it, and such persons did the work as directed by such engineer, then the law is, that the relation of master and servant existed between defendant and said engineer, and other persons doing the work, and the defendant is liable in all respects, the same as if it had done the work by men employed in any other way."

The judgment must be reversed and the cause is remanded.

*Judgment reversed.*