John W. Snyder, Plaintiff in Error, v. L. H. Sass, Defendant in Error.

### Gen. No. 17,214.

LATERAL SUPPORT—*where contractor gives notice of excavations.* Where plaintiff, a contractor, notified defendant of contemplated excavations along the wall of defendant's building and defendant wrote in reply to protect his wall "at the smallest possible cost," and subsequently the parties agreed plaintiff should make excavations in sections, take necessary steps to protect the wall and get defendant "out of it as cheap as he could," it was error to sustain defendant's motion to enter judgment for only the cost of concrete used in repairing the wall, when the action was also for other items of labor and lumber.

Error to the Municipal Court of Chicago; the HON. WILLIAM H. DIETERICH, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Reversed and remanded. Opinion filed November 7, 1912.

GALE BLOCKI, for plaintiff in error.

FREDERICK SASS, for defendant in error.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

Plaintiff in error (plaintiff below), a building contractor, had a contract for the erection of a building on a lot known as No. 45 N. Peoria street, Chicago.

Defendant in error (defendant below) was the owner of the adjoining lot on the south, which was improved by a two-story brick building, extending along the entire length of the lot, about 121 feet, the north wall of which building was about four inches from the north line of said lot. The south wall of the building to be erected by plaintiff was to extend to the lot line and along the entire length of the lot. Plaintiff made an examination of defendant's building, ascertained that the bottom of the south wall of the proposed building would be five or six feet below the bottom of the north wall of defendant's building, and notified defendant in writing of the situation and of the excavations necessary to be made. Defendant wrote plaintiff in reply: "If there is any support necessary for the wall, you are hereby authorized to protect the same at the smallest cost possible." Subsequently plaintiff had a conversation with defendant on the site of the proposed building, and plaintiff told defendant that he would try and make the excavations, and erect the foundation of the south wall of the proposed building, in sections, and in that way avoid the big expense of putting in a new foundation underneath the north wall of defendant's building. Defendant told plaintiff to use his best judgment and get defendant "out of it as cheap as he could." Plaintiff proceeded to excavate in sections that is, a piece of ground about four feet in length was excavated, then skipping about four feet of ground another similar excavation was made, and so on along the entire length of defendant's building. In these holes three layers of concrete were put in and after the intermission of a day the intermediate sections of ground were removed and the foundation in said sections was built up to the same level. There were about twenty-five of these sections along defendant's building, and during the progress of the work the north wall of defendant's building was properly braced by means of beams and timbers. It was discovered that in some places the foundation of said north wall

was "rotten" and portions thereof would fall and the
earth underneath would cave into some of said sec-
tions.    When this occurred plaintiff would fill in that
portion of defendant's foundation with concrete.    Af-
ter the foundation of the new building had been en-
tirely completed, defendant refused to pay plaintiff
for the latter's work in protecting his foundations,
wall and building and plaintiff brought suit in the Mu-
nicipal Court of Chicago.    At the trial, before the
court without a jury, plaintiff claimed the total sum
of $90.90, itemized as follows: the sum of $58.30 for
wages paid to his men for the additional time con-
sumed in erecting the foundations in the manner de-
scribed over and above the time which would have been
required to erect the same had defendant's land been
in its natural state, and not improved by said build-
ing, plus the usual and customary twenty per cent.
added to the cost of the labor for the contractor's
services, also the sum of $6.75 for lumber used in do-
ing the necessary bracing of defendant's north wall,
and also the sum of $25.85 for concrete necessarily
used when portions of the foundations of defendant's
wall fell and the earth underneath caved in, as afore-
said.    At the conclusion of plaintiff's case, the attor-
ney for defendant moved for a finding in favor of de-
fendant on the ground that plaintiff, in making said
excavations and erecting the foundations for said new
building, was required to use reasonable skill and care
so as to avoid doing unnecessary injury to defendant's
building, that plaintiff's claim was for labor and mate-
rials used in doing what the law required him to do,
and that, therefore, there was no basis for any finding
against defendant.    The court said that if said attor-
ney would modify his motion so that a finding might
be entered against defendant for the value of the con-
crete, $25.85, which was used for the purpose men-
tioned, he would grant the motion.    The motion was so
modified and such a finding was entered, upon which
judgment was rendered for $25.85 and costs in favor

of plaintiff.  This writ of error is prosecuted by plaintiff to reverse that judgment.  Counsel for plaintiff claims that the court erred in not allowing the entire claim of $90.90.

In the case of Lasala v. Holbrook, 4 Paige Ch. (N. Y.) 169, decided in 1833, Chancellor Walworth said (p. 172):

"I have a natural right to the use of my land in the situation in which it was placed by nature, surrounded and protected by the soil of the adjacent lots.  And the owners of those lots will not be permitted to destroy my land by removing this natural support or barrier.  Thus it is laid down by Rolle, that I may sustain an action against a man who digs a pit in his own land so near to my lot that my land falls into the pit.  2 Roll. Abr. 565, 1, 10.  But my neighbor has the right to dig the pit upon his own land, if necessary to its convenient or beneficial use, when it can be done without injury to my land in its natural state. I cannot, therefore, deprive him of this right by erecting a building on my lot, the weight of which will cause my land to fall into the pit which he may dig in the proper and legitimate exercise of his previous right to improve his own lot.  1 Sid. Rep. 167; 2 Roll. Abr. 565, 1, 5.  These principles were fully recognized by Ch. J. Parker, in the case of Thurston v. Hancock, 12 Mass. Rep. 233, where it was held that the defendants, who had excavated their own lot to the depth of thirty feet below the foundation of the plaintiff's house, were not liable for having thus placed the house in a dangerous position; but that the plaintiff was entitled to recover for the damage if any, which had been occasioned by the loss of his soil in consequence of such excavation.  And in the case of Panton v. Holland, 17 Johns. Rep. 92, where the defendant, in the exercise of ordinary care and skill in making an excavation for the improvement of his own lot, had dug so near the foundation of the plaintiff's house as to cause it to crack and settle, it was held that he was not liable for the injury."

In the case of Nevins v. City of Peoria, 41 Ill. 502, Mr. Justice Lawrence, in delivering the opinion of the court, said (p. 509):

"A man cannot do any thing upon his own soil, under the plea of ownership, which amounts to a nuisance and works injury to his neighbor, but within that limit he may do whatever his whim may dictate. He may excavate to any depth, or raise the surface to any height, and the neighboring owner has no right to complain, because his enjoyment of his own lot is not thereby prejudiced. Even if a building erected by me near the boundary of my lot is injured or endangered by an excavation made by my neighbor in his premises, I cannot complain, because I have no right to the use of his soil for the support of my building."

In the case of City of Quincy v. Jones, 76 Ill. 231, Mr. Justice Scholfield, speaking for the court, said (p. 240):

"I have the right to use my land in such reasonable way as my judgment shall dictate, either by making excavations or superstructures thereon, subject, however, to the implied condition that I shall not thereby interfere with my neighbor in the enjoyment of the same right in respect to his adjacent land. Each is entitled to have his soil, in its natural state, sustained, when necessary, by the lateral support of the adjacent soil of the other; but neither has the right to burden such support by any additional weight, because this would, to that extent, appropriate the use of the property of the one, to the benefit of the other. * * * Moreover, it is required of the owner of the soil, having the right to excavate notwithstanding there are buildings upon the adjacent soil, that he shall exercise the right with reasonable skill and care, in view of the character of the buildings and the nature of the soil, so as to avoid doing unnecessary injury to the buildings. * * * If injury is sustained to a building in consequence of the withdrawal of the lateral support of the neighboring soil, when it has been with-

drawn with reasonable skill and care to avoid unnecessary injury, there can be no recovery; but if injury is done the building by the careless and negligent manner in which the soil is withdrawn, the owner is entitled to recover to the extent of the injury thus occasioned.''

It is said in Washburn on Easements and Servitudes (p. 444):

''The way to reconcile these views and suggestions, and still to retain the distinction between an injury to the natural soil and an injury to the same soil burdened by a house or other structure thereon, seems to require some such rule as this; not only must the owner of the land, when causing an excavation thereon to be made, so conduct it as not to disturb the soil of the adjacent lot in its natural state, but if there be a dwelling-house thereon, he must use such care in the *mode* of excavating, to the *extent* above stated, as not to injure the house, provided this can be done without subjecting himself to extraordinary expense in guarding against such injury. He might, for instance, if there were no house standing upon the land, dig and remove portions of the lateral support for a considerable distance without substituting any such safeguard as a wall, and no injurious consequences would follow. Whereas if there were a house standing thereon, in order safely to carry the excavation to the same extent, bordering upon the land of his neighbor, he must expose only small portions of the soil at a time, as was done in Lasala v. Holbrook, where the defendant, as fast as he dug away his soil near the land of the plaintiff, supplied a support by the cellar-wall on which he was to rest his own house.

''Still even in this respect, he would only have to use reasonable care and diligence. Thus he would not have to prop up his neighbor's house, if the owner was cognizant of the excavation being made, in order to prevent its falling.''

In the case of Lasala v. Holbrook, *supra*, it was said (p. 173):

"From the recent English decisions it appears that the party who is about to endanger the building of his neighbor by a reasonable improvement on his own land, is bound to give the owner of the adjacent lot proper notice of the intended improvement, and to use ordinary skill in conducting the same; and that it is the duty of the latter to shore or prop up his own building, so as to render it secure, in the meantime. See Payton v. Mayor of London, 9 Barn. & Cress, 725; 4 Man. & Ry., 625, S. C.; Walters v. Pfeil, 1 Moody & Malk. 362; Massey v. Goyder, 4 Car. & Payne, 161."

See, also, 1 Cyc. 779; Bonaparte v. Wiseman, 89 Md. 12, 23; Serio v. Murphy, 99 Md. 545, 557.

In Dunlap v. Wallingford, 1 Pittsburgh Rep. 127, 133, it was said:

"If the owner of a lot erects his building at the line dividing it from one unimproved, he must take the risk of his position, and must use the necessary means to sustain his wall, if his neighbor, building subsequently up to his line, wishes to sink his foundation lower.   And this he must do at his own expense.

"If the second builder wishes to sink his foundation deeper than that of the first, he should give him reasonable notice of his intention, and permission, if requested, to come on his lot to underpin, shore up, or employ such other means as are best adapted to secure the safety of his wall and building."

"It has been held that the neglect or refusal of the owner receiving notice will authorize the owner intending to excavate to enter upon the land of the former and take needed precautions for the safety of the building or buildings thereon, and charges such owner with the expense thereby incurred."

1 Cyc. 780; and see Eads v. Gains, 58 Mo. App. 586, 593; Walters v. Hamilton, 75 Mo. App. 237, 247; Carpenter v. Reliance Realty Co., 103 Mo. App. 480, 491; Covington v. Geylor, 93 Ky. 275, 281.

In Eads v. Gains, *supra*, it was said:

"If it was necessary to the exercise by plaintiffs of ordinary care in excavating their own lot that de-

fendant's building should be shored or underpinned, and if defendant refused upon request to give it such support, and plaintiffs at additional expense gave it the necessary support, plaintiffs would be entitled to recover the damage necessarily caused, in doing the work as required by law, by defendant's negligence in failing to perform the duties cast upon her by law. If this were not true, plaintiffs could be required to short or protect defendant's building at their expense, or become responsible for its injury or destruction. For the law is universal, that, for the injury caused to a building by an excavation performed without ordinary care, the excavator is responsible. If, therefore, he could only do the work with ordinary care, as is assumed above, then he was bound to do so to escape liability for its injury or destruction. In other words to enjoy his own property rights he would be bound to suffer the loss and expense of shoring or underpinning a building erected by a coterminous owner, which doctrine is opposed to the whole consensus of decisions and text-books.''

In Obert v. Dunn, 140 Mo. 476, 486, it is said:

''Inasmuch as defendants owed plaintiff's lot no duty to support it when incumbered by the weight of his building, it must needs follow that defendants were under no obligation either to excavate the foundation for their cellar by piecemeal, or to build their wall in sections.'' See also, Charless v. Rankin, 22 Mo. 566, 575.

In view of the foregoing authorities, and in view of the facts disclosed in this record, that plaintiff notified defendant of the contemplated excavations for the new building, that defendant wrote plaintiff a letter in response to such notification authorizing plaintiff to protect defendant's wall ''at the smallest cost possible,'' that subsequently the parties had a conversation on the site of the proposed building, at which time plaintiff told defendant that he would make the excavations

and erect the foundation of the south wall of the proposed building in sections, and thereby, by this mode, protect defendant's wall and building at a smaller expense than by another mode, and that defendant directed plaintiff to use his best judgment and get defendant "out of it as cheap as he could," we are of the opinion that the court erred in sustaining at the close of plaintiff's case the defendant's motion above mentioned, and in entering the finding and judgment for only $25.85 in favor of plaintiff. The judgment of the Municipal Court of Chicago is, therefore, reversed and the cause remanded.

*Reversed and remanded.*