(No. 21912.—

JOHN MACER *et al.* Defendants in Error, *vs.* PETER J. O'BRIEN *et al.* Plaintiffs in Error.

*Opinion filed April 21, 1934—Rehearing denied June 6, 1934.*

WILLIAM H. SEXTON, Corporation Counsel, and HAYES & REMUS, (JOHN H. MCAULIFFE, of counsel,) for plaintiffs in error.

EARL J. WALKER, for defendants in error.

Mr. JUSTICE JONES delivered the opinion of the court:

John Macer and Sophia Macer recovered a judgment in the superior court of Cook county for $1502.90 against Peter J. O'Brien, doing business as Peter J. O'Brien & Co., and the city of Chicago. The suit was instituted to recover for injuries to plaintiffs' building and contents, alleged to have been caused by the negligent breaking up of portions of a street pavement. An appeal was taken to the Appellate Court, which affirmed the judgment, and the cause is here on *certiorari*.

The Sanitary District of Chicago is a municipal corporation independent of and separate from the city of Chicago. At the request of the sanitary district the city council of the city passed an ordinance authorizing the sanitary district at its own expense to construct and maintain a discharge sewer in certain streets in Chicago for a distance of about fifteen miles. One of the streets is Lavergne avenue, upon which the Macer property abuts. The ordinance provides that the sanitary district shall indemnify the city against all claims for damages by reason of the construction and maintenance of the sewer and restore

to their former condition of usefulness all pavements disturbed by the work. Pursuant to the authority granted by the ordinance the sanitary district let a general contract for the construction of the improvement to Dowdle Bros., a corporation. Dowdle Bros. excavated the trench, laid the pipe and back-filled the excavation. On Lavergne avenue the trench was approximately thirty inches wide, the east line of which was about twenty-eight feet west of the property line. They sub-let the restoration of the pavement to Peter J. O'Brien & Co. This contract called for the removal and replacement of that portion of the pavement outside the trench lines damaged by the work. In removing the damaged portion of the pavement in Lavergne avenue a large and very heavy iron ball was alternately hoisted and dropped by a machine from a height of eight or nine feet to the pavement, so as to break it up for easy handling. Plaintiffs contend that the vibration produced by dropping the ball cracked the foundation, stucco superstructure and plastering of their house and also the sidewalk in the yard; that the city had notice of the injurious effects of the work during its progress and that it failed and refused to stop such use of the iron ball.

There is some disagreement in the testimony as to the month when the ball was used, but the date is immaterial, because the testimony as to the damages relates to the time when work with the ball was actually done and to no other time.

Plaintiffs in error argue the following questions of fact: (1) Whether O'Brien had sub-let the particular work to O'Connor as an independent contractor; (2) whether plaintiffs' property was damaged by the work; (3) the amount of any such damage; and (4) whether or not the city of Chicago had notice of the damaging method employed in doing the work. These questions were fairly submitted to the jury. It decided them in favor of defendants in

error and judgment was entered upon the verdict. That judgment was affirmed by the Appellate Court. Therefore we are precluded by the finding of facts in those courts from any investigation of such questions.

The only question left for us is the one of law, which pertains to the liability of plaintiffs in error under the definite facts with which we are confronted and by which we are bound. Under those facts O'Brien is plainly liable, but it is contended that the city is not liable because it was not a party to any contract for the work and had no voice or control over it. As a general rule, a municipality can not be held liable *ex delicto* unless the tort was committed by its agents or servants under circumstances such as would bring the doctrine of *respondeat superior* into operation. An exception to this rule is where the contract requires the doing of work which is intrinsically dangerous in and of itself, no matter how carefully it may be performed. In cases of that kind, such as the boring of tunnels, the deep removal of large areas of lateral support, the use of high explosives, etc., the principal remains liable, regardless of the intervention of an independent contractor. (2 Dillon on Mun. Corp. (4th ed.) sec. 1028 *et seq.*) The liability of a municipal corporation for the acts of an independent contractor acting under a contract with a licensee has not been directly before this court. The general rule is, that where a municipal corporation grants a license authorizing work in its streets for a purpose which is proper and lawful, the blame for a resulting injury must attach to the person who mis-uses or abuses the license and not to the municipality. There is an exception to that rule and to the rule announced by Dillon—*i. e.,* where the municipal authorities have notice of the negligence of the licensee. (*Warsaw* v. *Dunlap,* 112 Ind. 576, 11 N. E. 623.) Where an injury results from the negligent mode in which the licensee of a city exercises a privilege granted to him, the city can be held liable for a resulting injury only

on proof of knowledge or notice to the city and subsequent acquiescence in the use. (*Cohen* v. *New York,* 33 Hun, 404.) The general rule of non-liability of a municipality for the acts of an independent contractor has no application where, after notice of the defect or damage resulting from the contractor's negligence, the municipality fails to take proper measures to remedy the defect. 43 Corpus Juris, "Mun. Corp." 947.

In *Johnson* v. *City of Philadelphia,* 236 Pa. 510, 84 Atl. 1014, an abutting property owner brought a suit against the city for damages to his building by fire as a result of large quantities of inflammable material being permitted to lie exposed in the streets for several weeks. It was held that the duty of a city, in exercising control and supervision over its streets, to an abutting property owner is analogous to the duty which an individual land owner owes to the premises of his neighbor.

In *Jones* v. *McMinimy,* 93 Ky. 471, 20 S. W. 435, the plaintiff was injured by a rock thrown up by a blast set off in the course of the work of excavating a cellar. It was held error to direct a verdict for the defendant on the ground that the work was being done by an independent contractor. In stating the principles which were to control the case in the second trial the court said: "Where he, [the employer,] as a prudent man, has no reason to believe that the act contracted to be done is a nuisance but is in itself lawful, and it turns out during the progress of the work that it is necessary to create a nuisance in order to do the work, then the contractee is not liable for injuries to third persons resulting from the nuisance before he had notice of its existence. But in such case, upon receiving notice, it would be his duty to take such reasonably prompt and efficient means as are within his power to suppress the nuisance, else he will be responsible for injuries to third persons resulting from the nuisance, after notice."

In *Schumacher* v. *City of New York,* 166 N. Y. 103, 59 N. E. 773, a trench for laying pipe in a street was dug under a permit from the city and the excavated dirt was thrown into the gutter, where it lay two days, damming the gutter and a culvert, of which the city had notice. A storm filled the gutter and the water ran into a basement on abutting premises, ruining the goods of plaintiff. It was held that the city, having notice, was liable.

While a city has control of its streets it has no more power over them than a private individual has over his own land, and cannot, under a claim of public convenience, be permitted to exercise that dominion to the injury of another's property in a mode that would render a private individual responsible in damages without itself becoming responsible. (*Nevins* v. *City of Peoria,* 41 Ill. 502; *City of Pekin* v. *Brereton,* 67 id. 477; *Stack* v. *City of East St. Louis,* 85 id. 377.) In the *Pekin case* the right to recover for damage to lots owned by the plaintiff by reason of grading done in the construction of a railroad on a public street was sustained. In the *East St. Louis case* the damage arose from the construction of a bridge approach under a permit from the city. The right of an adjoining property owner to recover damages for the removal of lateral support by a licensee of the city of Chicago was upheld in *Barnard* v. *City of Chicago,* 270 Ill. 27.

The rule is well settled that a municipality is bound to exercise its control over streets for the protection of the public. That duty extends to abutting property. If the municipality permits work intrinsically dangerous to be done in a street it is liable for any resulting damage to the public or to abutting property even without notice that such damage is being done, and it cannot escape liability for damages occasioned by a dangerous method employed in work not of itself intrinsically dangerous if it has notice of such dangerous method and thereafter fails to prevent it. It is not liable for momentary negligence of persons

performing work not intrinsically dangerous, under a contract which leaves the contractor the general control over the work. In such cases the liability, if any, attaches when the municipality has notice of the dangerous character of the method being employed and fails to take proper steps to prevent the further prosecution of such method. When a municipal corporation fails to perform some legal duty it cannot exonerate itself by showing that an independent contractor had been engaged to perform that duty. It is not made liable for the negligence of the contractor but is held liable for failing to perform the duty imposed upon it by law. (19 R. C. L. "Mun. Corp." 1140.) In this case, the facts being settled that the city had notice during the progress of the work that plaintiffs' property was being damaged thereby and that it failed and neglected to stop the damaging method employed, it became liable for the resulting damage after such notice.

During the trial, Mrs. Macer, in response to a question by the court, testified that O'Brien told her, in a conversation over the telephone, that he was insured and if any damage was done they would take care of it. The court denied a motion to strike the reference to the insurance company. In this the court erred. We have frequently condemned such errors and we have no intention of modifying those rulings. However, it is apparent that upon another trial the omission of that statement would not cause a different verdict to be returned. The error in this instance should not work a reversal of the judgment. *People* v. *Weir,* 295 Ill. 268; *People* v. *Murphy,* 276 id. 304.

The third instruction given at the request of the plaintiffs told the jury that the city was under a duty to use reasonable care to regulate the use of the street, and the law did not absolve it from such obligation because the construction may not have been done by the city itself. Under the facts in this record the instruction announced

a correct principle of law. *Welch* v. *City of Chicago,* 323 Ill. 498; *Town of Normal* v. *Bright,* 223 id. 99.

We observe no reason for disturbing the judgment of the Appellate Court, and it is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SHAW, dissenting:

I most respectfully dissent from the opinion of the majority in this case and feel that my reasons should be stated because of my fear that an entirely new and hitherto unsuspected field of municipal liability is being opened.

I am unable to find that the case was either pleaded or tried upon any theory of notice to the city and subsequent acquiescence in the work, coupled with power to prevent it. Neither do I think there was sufficient evidence in the record to fairly make an issue on this point as a matter of law. The gist of plaintiff's declaration was as follows: "That the defendants, Peter J. O'Brien and the city, contriving how they might injure the property of the plaintiffs, etc., did then and there authorize the pavement in the street to be carelessly and negligently, with great force and violence, broken up by the said Peter J. O'Brien and divers of his agents, and in so doing did then and there use divers derricks, hoists and other machinery, and a large, heavy, unwieldy metal or steel ball, and did drop the same in a careless and negligent manner from a great height with unreasonable force upon the surface of the street, and did unreasonably jar, shake, injure and damage the ground, soil, land and buildings of the plaintiffs. (Abst. 4.)"

It appears clearly from the record that plaintiff's case was tried upon a mistaken theory that a city is liable for anything and everything done in its streets, either by its own servants or through an independent contractor. There is an apparent confusion running through this entire case as to the distinction between a city's liability for travel accidents upon its streets and that very distinct and different form of liability where the injury is to some one not

on the street and occasioned by the negligence of an independent contractor. There is also a confusion between such injuries as may be accidentally caused to abutting property through negligently doing work in the street and those injuries where abutting property is necessarily and intentionally damaged as a necessary incident to the making of a public improvement. In such cases the city is obviously liable in damages for the intentional taking of private property for public use. In those cases where the property is actually damaged without any intention to do so and without any resultant benefit to the public, the law is most clearly settled that if liability is to be fixed upon the city it must either be on the ground that the city itself was guilty of some act of negligence through its own servants in such a way as to bring the doctrine of *respondeat superior* into play, or it must be in connection with work so intrinsically dangerous that the principal remains liable because of usual and familiar rules of law, or it must be such work as the city is bound to perform under its charter powers and as to which it may not divest itself of liability.

The work in this case was being done by the Sanitary District of Chicago through various contractors, and this was permitted by a certain ordinance of the city of Chicago consisting of five sections. In substance, section 1 granted a perpetual easement to the sanitary district to construct the sewer along streets therein named. Section 2 granted authority to construct and maintain man-holes and make connections with the sewers of the city of Chicago in such a manner as might be agreed upon between the commissioner of public works of the city of Chicago and the chief engineer of the sanitary district. Section 3 granted the right to intercept existing sewers with the approval of the commissioner of public works. Section 4 provided that the rights granted were upon condition that the sanitary district should at its own expense make such changes in the location of the police and fire-alarm wires as might

be rendered necessary, making them at such places as designated by the commissioner of public works and subject to the approval of the commissioner of gas and electricity; that the entire sewer should be constructed, maintained, etc., at the expense of the sanitary district and that the city should not be held responsible for anything connected with its construction, maintenance, repairs or operation; that the sanitary district should indemnify the city against all claims for damages occasioned by its construction, maintenance or repair; that the sanitary district should restore all streets to their former condition; that subject to the approval of the commissioner of public works it might leave certain materials upon unimproved streets; that temporary bridges and cross-walks should be maintained for foot traffic upon torn-up streets; that it might employ engines and cars upon temporary tracks, and other equipment, on the street; that the sanitary district might at its own expense make such alteration in the location of the water mains as might be necessary, such changes being subject to the supervision and approval of the commissioner of public works, and that such commissioner be authorized to issue all necessary permits for doing any of the work without requiring the deposits usually required from contractors or others working in the streets. Section 5 provides that the ordinance should be in force from and after its approval and acceptance by the sanitary district.

This review of the ordinance is necessary in order to show that the city retained no control over any part of the work except as to the disturbance of water mains and certain wiring in the streets, those matters being subject to the approval of the proper authorities. In no way did the city retain any control over the method or manner of doing the work. It had no power to interfere with it, to hire or discharge any employee or contractor, and could not have stopped the work here in question, even after notice, except through some exercise of the police power. Mr. and Mrs.

Macer had as much control over the work being done, and as much right to stop it, by injunction or otherwise, as did the city of Chicago.

The cases cited in support of the majority opinion do not sustain it. After correctly stating the rule that a municipality cannot be held liable *ex delicto* unless the tort was committed by its agents or servants under circumstances such as would bring the doctrine of *respondeat superior* into operation, it proceeds to destroy all the benefit of that well-founded rule to which the city is clearly entitled. It is not disputed in the opinion that the general rule is that a city doing work through a contractor is not ordinarily responsible for the negligence of the contractor unless the work is intrinsically dangerous. It is entirely clear that the taking up and re-laying of a narrow strip of pavement is not intrinsically dangerous, as it may be, and ordinarily is, accomplished in entire safety. The opinion then proceeds to state that the city can be held liable for resulting injury only upon proof of knowledge or notice to the city and subsequent acquiescence in the use. The authority cited for this statement is *Cohen* v. *New York*, 33 Hun, 404. That case is from a court of inferior jurisdiction, having been decided in the first department of the Supreme Court of New York in 1884. The holding in the case was that the city was not liable under the facts therein stated, and the judgment was reversed. Two out of the three judges of that court concurred in the opinion and one dissented. It appeared that one Marks had been granted a license to store his wagon in the public street, and that when another wagon struck it, its thills fell down, killing a pedestrian on the sidewalk. It was held that where the injury clearly resulted from the negligent manner in which a licensee exercised his license, there must be a showing of permission to continue or acquiescence in the negligent use after notice or knowledge thereof. The case is not from an authoritative court and is not in point here.

The case of *Warsaw* v. *Dunlap*, 112 Ind. 576, is cited in the majority opinion. That case is clearly not in point, as the injury involved resulted from the plaintiff falling over a plank across a sidewalk. The accident occurred after dark on the first day on which the plank was placed there, and the city was held not liable because it was not shown that it had notice of the situation. It is a case of a travel accident on the public street and has nothing to do with the one we are considering.

The case of *Johnson* v. *City of Philadelphia*, 236 Pa. 510, is cited in the opinion. In that case the city, after notice, negligently permitted large quantities of inflammable material to lie for several weeks in the street adjacent to plaintiff's property. It caught fire and plaintiff's property was destroyed. The only holding of the court is that the duty of a city is the same as that of an individual. It cites several cases, including *Nevins* v. *City of Peoria*, 41 Ill. 502, (hereafter discussed,) and says: "These cases are authority for the rule that the duty of a city in exercising control and supervision over its streets to an abutting property owner is analogous to the duty which an individual land owner owes to the premises of his neighbor." Under this rule it was held that the city would only be liable for damages to an abutting owner if the facts warranted the inference that it had permitted these inflammable materials to be placed in the street in such close proximity to the property of the appellee as (to quote the court exactly) "to amount to a willful or wanton or negligent disregard of the rights of such abutting owner. It certainly would not be liable to the adjoining property owner for injuries caused by the ordinary use of the streets, or for damages indirectly resulting from the ordinary and usual accumulation of waste materials upon the street. To permit a recovery in this case it must be shown that the accumulation of inflammable materials was unusual, extraordinary and dangerous, and that the city should have anticipated the danger

to the property of appellee as a consequence of a fire breaking out in the rubbish deposited so close to its property."

The case of *Jones* v. *McMinimy,* 93 Ky. 471, cited in the opinion, can have no application to this suit, because the work there being done was blasting, which is so intrinsically dangerous that the owner remains liable even though the work is done by a contractor.

In the case of *Schumacher* v. *City of New York,* 166 N. Y. 103, 59 N. E. 773, it appears from the opinion that the work was to be done at times and places designated by the city commissioner, in accordance with plans approved by him and to his entire satisfaction. The work was done upon and in connection with gutters and sewers which were under the entire control of the city and for whose good working order the city was responsible in the discharge of its franchise powers. It was provided in the permit that the work was not to be commenced at any point until the inspectors for the city "were on the ground to give the necessary instructions." The opinion of the court is based upon its finding that there was a duly authorized agent of the city on the job witnessing everything that was done and at all times knowing the danger and damage that was being done and with full power to correct it. The case is decidedly different from the one we are considering.

It is stated in the majority opinion: "While a city has control of its streets it has no more power over them than a private individual has over his own land, and cannot, under a claim of public convenience, be permitted to exercise that dominion, to the injury of another's property, in a mode that would render a private individual responsible in damages without itself becoming responsible." In support of this branch of the case the opinion cites *Nevins* v. *City of Peoria,* 41 Ill. 502, *City of Pekin* v. *Brereton,* 67 id. 477, and *Stack* v. *City of East St. Louis,* 85 id. 377.

The case of *Nevins* v. *City of Peoria, supra,* was a case in which private property was necessarily damaged (and

the court held therefore "taken") in connection with a change in the grade of Main street, in Peoria, which caused a flow of water away from its natural channel onto the land of the plaintiff. It is not in point here, as the damage to the plaintiff was a necessary incident to the making of the improvement, and, whether done by a contractor or the city itself, it was a case of taking private property for public use, for which compensation must be made. We find the following sentence in the opinion: "Where a city has work done by contract and a servant of the contractor does something not authorized by the city, such as improperly leaving open a drain at night, the city would not be liable even though by the terms of the contract a general supervision is retained over the work, * * * but if, on the other hand, the acts which caused the injury were done under and in consequence of the direction of the city, then the city is to be regarded as the superior and responsible as such although it does the work by contract."

*City of Pekin* v. *Brereton, supra,* is a similar case, in which the property of the plaintiff was incidentally and necessarily damaged in connection with the making of a public improvement, whereby the plaintiff's means of access to his property was impaired. It is another case of taking private property for public use, for which compensation must be paid. So, also, is the case of *Stack* v. *City of East St. Louis, supra,* in which a city permitted the erection of an approach to a bridge in such a manner as to obstruct plaintiff's means of ingress and egress.

The case of *Barnard* v. *City of Chicago,* 270 Ill. 27, was one in which the property of the plaintiff was injured by the construction of a tunnel, under an ordinance of the city, whereby plaintiff's building was damaged. Liability in that case was fixed upon the city in an opinion by Mr. Justice Dunn upon a theory that plaintiff's property had been damaged for a public use, although it might have been sustained upon the theory that tunneling is an in-

trinsically dangerous operation. Justices Cartwright and Cooke dissented.

At the end of the majority opinion it approves an instruction which told the jury that the city was under a duty to use necessary care to regulate the use of the street, and that the law would not absolve it from such obligation because the construction may not have been done by the city itself. The cases of *Welch* v. *City of Chicago,* 323 Ill. 498, and *Town of Normal* v. *Bright,* 223 id. 99, are cited as authority for this statement. The *Welch case* cannot be authority upon the facts in this case because the facts are in nowise similar. The action in that case was for damages by a woman who fell down in the street while walking thereon and by reason of a defect therein. The case involved a travel accident, and the facts referred to the condition and not the use of the street by the city or a contractor. There is nothing in the opinion to sustain the instruction objected to in this case. The *Town of Normal case* is likewise not in point, as it, also, involved an injury to a pedestrian resulting from a defective condition of the street. It also involved a matter of the *condition* of the street rather than *use* of it. The instructions approved in that case all referred to the duty of the city to keep its streets in a safe condition for public use and do not in any way refer to the manner in which a street is used by the city or a contractor.

The opinion entirely ignores the case of *Foster* v. *City of Chicago,* 197 Ill. 264. No good purpose can be served by reviewing it here, but it is there clearly held, in accordance with the rule stated by Dillon, that the city is not liable for the negligent acts of a contractor where the city has no control over the work and the work itself is not intrinsically dangerous.

In my opinion the judgment should be reversed as to the city of Chicago.