Fred Schumacher et al., Respondents, *v.* The City of New York, Appellant.

1. Municipal Corporations — Notice of Obstructed Culvert — Negligence in Failing to Remove Obstruction.   A municipal corporation is liable for damages to property caused by water which percolated through a basement wall from a trench excavated in a public street by an independent contractor under the supervision of an inspector appointed by the city in pursuance of a "permit" issued under a statute authorizing the contractor to open any street or avenue upon obtaining the consent of the commissioner of public works, and granted under certain conditions, including the right of inspection, by an inspector to be appointed by the commissioner, but paid by the contractor, which trench was left unprotected, so that during an unusual but not unprecedented fall of rain, on account of excavated earth and stones having been thrown into an adjoining gutter and culvert and obstructing the same, the water entered and percolated therefrom into the basements of adjacent buildings, where the city has notice, express or implied, of the obstruction and makes no attempt to open the gutter, uncover the culvert, protect the trench or provide for the water.

2. When Notice to Inspector is Notice to the City — When Inspector Represents City.   The city has notice of the obstruction where the inspector represents the city and either knew or should have known of it and the danger to be apprehended from its continuance, and although the statute does not in terms authorize his appointment as a condition of granting the permit, he is a duly authorized agent of the city, since a statute authorizing a public officer to grant as a favor and not as a right the privilege of tearing up its pavement and digging a trench in a public street, gives him by implication the right to attach to the grant reasonable restrictions for the protection of the public, including the power of inspection by himself or a duly appointed agent in order to see that they are complied with.

3. When City Chargeable with Actual Notice.   When the obstruction has existed for two days at a prominent corner near the center of the city, where the street was much traveled, and the inspector is on the spot, watching the progress of the work, witnessing the digging of the trench, the obstruction of the culvert and gutter, and seeing the danger to be apprehended therefrom, his knowledge of the situation is that of the city, which, therefore, had actual notice that the property in the neighborhood of the trench, gutter and culvert would be threatened with injury if a rain should occur, and having failed to take proper precautions, it is liable for the consequences resulting from its negligence.

*Schumacher* v. *City of New York*, 40 App. Div. 320, affirmed.

(Argued January 16, 1901; decided February 26, 1901.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 14, 1899, sustaining plaintiffs' exception to the dismissal of the complaint, ordered to be heard in the first instance by the Appellate Division, and directing a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John Whalen,* Corporation Counsel (*Theodore Connoly* and *Terence Farley* of counsel), for appellant. The permit granted by the deputy · commissioner of public works was clearly beyond his powers, and the alleged supervision or control exercised by virtue of its provisions imposed no lia-bility on the city for the negligence of the licensee. (*Smith* v. *City of Rochester,* 76 N. Y. 506; *Fowler* v. *Alexandria,* 3 Pet. 398; 2 Dillon on Mun. Corp. [4th ed.] §§ 953, 969; *Anthony* v. *Inhabitants of Adams,* 1 Metc. 284.) The rela-tion of master and servant does not exist between a city and its licensees, and the doctrine of *respondeat superior* has no application. (*Dorlon* v. *City of Brooklyn,* 46 Barb. 604; *Sweet* v. *Vil. of Gloversville,* 12 Hun, 302; *McDermott* v. *City of Kingston,* 19 Hun, 198; *Masterton* v. *Vil. of Mount Vernon,* 58 N. Y. 391; *Ryan* v. *Curran,* 64 Ind. 345; 31 Am. Rep. 123; *Dooley* v. *Town of Sullivan,* 112 Ind. 451; *City of Warsaw* v. *Dunlap,* 112 Ind. 576; *Hunt* v. *Mayor, etc.,* 109 N. Y. 134; *Schnurr* v. *Board,* 22 Ind. App. 188; *Macomber* v. *Taunton,* 100 Mass. 255.) There is no evidence that the trench of itself was intrinsically dangerous; nor is there any evidence that the corporate authorities had notice, or were negligent in not acquiring notice. (*Daniel* v. *Met. Ry. Co.,* L. R. [3 C. P.] 216, 591; L. R. [5 H. L.] 45; *Brusso* v. *City of Buffalo,* 90 N. Y. 679; *Hawkins* v. *Mayor, etc.,* 54 App. Div. 258.)

*Charles E. Hughes* and *John Delahunty* for respondents. The inundation of the plaintiffs' premises was due to the cut-ting off of the surface drainage from its proper outlet at the sewer culvert and its accumulation in a trench which had been

opened in the street directly in front of plaintiffs' vault wall. (*Higgins* v. *Eagleton*, 155 N. Y. 471.) The defendant having authorized the excavation and having direct control of the execution of the work, failed to take proper precautions to keep the culvert unobstructed and to prevent the accumulation of the surface drainage in the trench and its discharge upon the plaintiffs' premises. (*Hines* v. *City of Lockport*, 50 N. Y. 236 ; *Mayor, etc.*, v. *Furze*, 3 Hill, 612 ; *Barton* v. *City of Syracuse*, 36 N. Y. 54 ; *McCarthy* v. *City of Syracuse*, 46 N. Y. 194 ; *Evers* v. *Long Island City*, 78 Hun, 242 ; *Rochester U. L. Co.* v. *City of Rochester*, 3 N. Y. 463 ; *Noonan* v. *City of Albany*, 79 N. Y. 470 ; *Byrnes* v. *City of Cohoes*, 67 N. Y. 204 ; *Bastable* v. *City of Syracuse*, 8 Hun, 587 ; 72 N. Y. 64 ; *Seifert* v. *City of Brooklyn*, 101 N. Y. 136.)

VANN, J.   This action was brought to recover damages from the defendant on account of its alleged negligence, which resulted, as it is claimed, in injury to certain personal property of the plaintiffs while in the basement of their store on the southwest corner of Eighteenth street and Fourth avenue in the city of New York. The answer was in substance a general denial. The complaint was dismissed at the close of the evidence for the plaintiffs, but their exceptions, when heard in the first instance by the Appellate Division, were sustained and a new trial was ordered.

The facts, as the jury might properly have found, are as follows : About the 1st of November, 1897, a trench was dug by the Tubular Despatch Company, two feet east of and parallel to the curb line on the west side of Fourth avenue, adjacent to the plaintiffs' building, the basement of which extended under the sidewalk. During a heavy rain, which commenced in the afternoon and continued through the night, water accumulated in this trench, washed out the sand between it and the basement wall, and then percolated through the wall into the basement, where, without fault on the part of the plaintiffs, it injured their merchandise to the extent of over $7,000. The trench was several rods long, four or five feet wide and more

14

than eight feet deep.    In making the excavation therefor earth
and stones were thrown over the space between the trench and
the sidewalk so as to fill up the gutter, and also over a culvert at
the southwest corner of Eighteenth street and Fourth avenue,
so as to prevent the water from entering it.    This culvert was
located at the lowest point in the neighborhood and, when unob-
structed, received and carried off the surface water from Seven-
teenth street, Union square and Eighteenth street.    There was
no other culvert that could take the drainage from that terri-
tory, so that during the unusual, but not unprecedented fall
of rain, the water flowed from all directions to this point, and
as it could not enter the sewer sought the trench as the lowest
level it could find.    Owing to the obstruction of the gutter,
water also flowed into the trench from Fourth avenue.    The
trench thus became a pocket for all the surface drainage of a
large area.

The trench was dug in pursuance of a "permit" issued
under a statute which authorized certain persons to place
pneumatic tubes of iron beneath the surface of public streets,
and, for that purpose, to open any street or avenue, upon
obtaining the consent of the commissioner of public works.
(L. 1874, ch. 400.)    The permit was granted upon certain con-
ditions imposed by the commissioner to protect the interests
of the public, including the right of inspection of " all the work
from the time the excavation shall be commenced to the time
the pavement shall be relaid," by inspectors to be appointed
by the commissioner but paid by the company.    The condi-
tions, among other things, provided for the convenience of
public travel, the safety of water mains, sewers and subways,
the dimensions of the trench, the restoration of the street to
good order, the prevention of accidents, the protection of the
city from claims for damages to persons and property owing
to the negligence of the company, the payment to the city
each year of a certain percentage of the gross receipts of the
enterprise, and the like.    The work was to be done at times
and places designated by the commissioner, in accordance with
plans approved by him and to his entire satisfaction.    While

he could require the discharge of negligent workmen, he could neither employ men nor select men for the company to employ. He could insist upon certain results for the protection of the city, but the means of doing the work was left under the control of the company. Neither the company nor its employees were the agents of the city. (*Uppington* v. *City of New York*, 165 N. Y. 222.) In addition to this general permit the commissioner granted a special permit to open Fourth avenue for a certain distance, which included the frontage of the plaintiffs' premises.

The damages to the property of the plaintiffs were caused by the obstruction of the culvert and gutter, the construction of the trench and leaving it, unprotected, in such a situation with reference to the culvert and gutter, that the water from a heavy rain would flood the corner, enter the trench and percolate therefrom into the basements of the adjacent buildings. The city had notice of the necessities of the locality with reference to surface drainage, for it created them. It knew the danger to be apprehended from an unusual rain-fall in case the culvert and gutter should become obstructed, and if, on the occasion in question, it knew or should have known that the culvert was closed entirely, as well as the other facts as they then existed, yet took no care to prevent injury to neighboring property, it was liable for damages naturally resulting from its neglect. Having provided gutters, culverts and sewers for the surface drainage, it was bound to the use of reasonable diligence to discover and remedy defects therein. (*Barton* v. *City of Syracuse*, 36 N. Y. 54; *McCarthy* v. *City of Syracuse*, 46 N. Y. 194; *Hines* v. *City of Lockport*, 50 N. Y. 236; *Nims* v. *Mayor, etc., of Troy*, 59 N. Y. 500; *Mayor, etc., of N. Y.* v. *Furze*, 3 Hill, 612.) It is not excused because the storm was heavy and unexpected, as its care should include preparation, after notice of the obstruction, express or implied, for such storms as may reasonably be foreseen, and which, judging from experience, are liable to happen at any time in this climate. It made no attempt to open the gutter, uncover the culvert, protect the trench or provide for the water.

The defendant claims that it had no notice of the situation and hence could not guard against the danger. The situation already described had existed for at least two days at a prominent corner, near the center of the city, where the streets were much traveled. The trench was dug, as it must be assumed, under the supervision of an inspector appointed by the commissioner of public works, for, according to the conditions of the permit, work was not to be commenced at any point or the pavement disturbed or materials deposited anywhere " until the inspectors " were " on the ground to give the necessary instructions." While it does not expressly appear that the inspector saw the situation of affairs at the plaintiffs' corner, the jury could have found, in the absence of evidence to the contrary, that he saw or should have seen the danger. It was his duty to see it and either to remedy or report it. That is what he was employed for. If he represented the city, his negligence in this regard was the negligence of the city.

The defendant, however, claims that the inspector did not represent the city, because the provisions of the permit authorizing his appointment for the purpose of inspecting and supervising the work of construction, were *ultra vires* and invalid. The argument made in support of this claim is that as the statute authorizing the commissioner to grant a permit did not in terms empower him to impose conditions, the result is the same as if none had been imposed, and hence that the appointment of the inspector was not an act of the city and notice to the inspector was not notice to the city.

When general power is confided to a public officer to grant, as a favor and not as a right, the privilege of tearing up the pavement and digging a trench in a public highway, there goes with the power by implication of law the right to attach to the grant reasonable conditions for the protection of the public. As such a grant can be made only for a public purpose, reasonable stipulations to protect the public interests, when the statute is silent on the subject, come within a reasonable exercise of the power to make the grant. The statute, when construed in connection with the general duty of the

city with reference to the care of streets, means that the officer in consenting that the streets may be disturbed, may take due precautions to prevent abuse of the privilege and to see that public or private property is not injured. The legislature did not intend to so hamper the commissioner that he could simply give a naked consent to tear up the streets, without regard to the obligation of the city to keep them in good order, or to prevent him from requiring the company to restore them to their former state of usefulness and to comply with his directions as to when, where and to what extent a given street should be opened so that public travel should be interfered with and public sewers disturbed as little as possible. Yet, if he could impose these conditions, he could impose others equally reasonable, and the power to place any restrictions about the grant included the power of inspection by himself, or a duly appointed agent, in order to see that the restrictions were complied with. Thus we have a duly authorized agent of the city on the spot, as we may assume the jury would have found, watching the progress of the work, witnessing the digging of the trench, the obstruction of the culvert and gutter, and seeing the danger to be reasonably apprehended therefrom. What he saw the city saw. The city, therefore, had actual notice that property in the immediate neighborhood of the trench, gutter and culvert would be threatened with injury if a rain should occur, yet it made no effort to discharge the duty which under the circumstances was imposed upon it by law.

The plaintiffs were entitled to go to the jury, because the evidence, when reasonably considered, would have warranted a verdict in their favor. The order of the Appellate Division, sustaining the exception taken to the dismissal of the complaint and ordering a new trial, was proper and should be affirmed and judgment absolute rendered against the defendant upon its stipulation, with costs in all courts.

BARTLETT, HAIGHT, MARTIN, LANDON and CULLEN, JJ., concur; PARKER, Ch. J., taking no part.

Ordered accordingly.