EARL V. SERVOSS, Respondent, *v.* THE CITY OF AMSTERDAM, Appellant.

(County Court, Montgomery County, October, 1909.)

Municipal corporations — Defective streets and bridges and places contiguous thereto — Actions to enforce liability for defects — Questions for jury — Defects in bridges.

While plaintiff, on January 16, 1909, was carefully driving a horse and cutter across a bridge, in a thinly settled part of the defendant city, which he had crossed every day for several years and sometimes several times a day, on foot or with horse, the right fore leg of his horse went through a plank and was injured. Plaintiff knew prior to the time of the accident that at the place where it occurred the planks were getting worn but it did not appear that he knew of any hole or pocket in the plank where the accident occurred, or that the bridge was unsafe. The con-

tractor, who in 1905 had replanked the bridge for the city with three-inch hemlock planks, testified that such a bridge ought to last about four years. About a month prior to the accident defendant's assistant street commissioner put in a new plank adjoining the one through which the horse's foot went, and, in an action for damages brought in justice's court, the justice confined the evidence as to the condition of the bridge to the condition of the new plank and the one through which the leg of the horse went; and it appeared that at the particular point where the accident occurred the plank was worn down to a pocket which went through leaving an opening eighteen inches long and six or seven inches wide.

Held, that, under all the circumstances of the case, the questions of defendant's negligence and of plaintiff's contributory negligence were for the jury and their finding in favor of the plaintiff was conclusive.

Appeal from a judgment rendered in a justice's court in favor of plaintiff.

Walter I. Hover, for plaintiff.

Christopher J. Heffernan, for defendant.

Moore, J.   This is an appeal from a judgment for fifty dollars damages and nine dollars and eighty cents costs, in all fifty-nine dollars and eighty cents, rendered in justice's court upon the verdict of a jury.

Plaintiff was driving across a bridge in the defendant city with a horse weighing about 1,000 pounds, and in a cutter. The right fore leg of the horse went through a plank in the bridge, and the horse was injured.   At the time of the accident the horse was walking.   The date was January 16, 1909, and there were a little snow and ice on the bridge:   The bridge was broad enough for conveyances to pass each other, but only one track was used in winter.   The bridge was in a thinly settled part of the city.   The plaintiff had crossed the bridge every day for several years, sometimes several times a day, crossing at times on foot and at times with horse.

The bridge had been replanked by the city in the summer of 1905, three-inch hemlock planks being used.   The contractor who replanked the bridge for the city testified that such a bridge of hemlock ought to last about four years.

About a month before the accident, or in the late fall or early winter, a new plank was put in the bridge by the city, such new plank adjoining the one through which the plaintiff's horse subsequently fell, as stated. The evidence upon the trial relating to the condition of the bridge was confined by the court below quite strictly to the condition of the plank through which plaintiff's horse fell, and this new plank adjoining it; evidence as to the general condition of the rest of the bridge being, in the main, excluded.

The plaintiff called a Mr. Strevy, who testified that he knew about when this new plank was put on. He was asked this question: " Q. Did you communicate to the city officials in reference to the condition of the plank prior to the putting on of this new plank?"

This was objected to by the defendant, on the ground, among others, that it did not relate to the particular plank through which plaintiff's horse fell. The attorney for the plaintiff then stated: " I offer this evidence, the testimony of Mr. Strevy, for the purpose of showing that, when the plank adjoining the plank in question broke through in the fall, he notified the city authorities of that fact, and as being evidence of actual notice of the condition of the flooring of the bridge in general and the adjoining planks in particular." The objection of the defendant was sustained, and the evidence not admitted. If the plaintiff could have established that the city was given notice that the bridge was defective and out of repair in the very locality where the accident subsequently occurred, and in the adjoining plank, it would seem that he should have been allowed to do so. A requirement that the notice of defective conditions given the city, to be effectual, must be directed to the particular plank or include the particular plank which subsequently gives way, resulting in the accident, is, it would seem, entirely too stringent and not exacted by the law.

However that may be, it is clear that the city authorities knew of the condition of the adjoining plank, because Mr. Casler, an assistant street commissioner, went and put the new plank in, prior to the accident. Mr. Casler testified that, at the time he put in the new plank, he noticed the other

planks, and that they were in safe condition, being worn away about one-quarter or three-quarters of an inch.

The evidence very clearly shows that the plank through which the plaintiff's horse fell had been worn away, some witnesses testifying an inch, some less. It further appears that, at the particular point where the leg of the horse went through, it was worn down to a pocket, and this went through, leaving an opening in the plank eighteen inches long and six or seven inches wide.

It seems hardly possible that the assistant street commissioner could have put down the adjoining new plank without noticing the general condition of the plank through which the horse afterward fell, or without observing the pocket referred to, if there. He says that he did notice the planks on the bridge; and, although he characterized them as being in a safe condition, the result shows that this one, with the pocket in it, was not.

The opinion of the assistant street commissioner that the planks were in a safe condition did not render the bridge any less dangerous. Whether or not the bridge was dangerous and should have been repaired was a question to be determined by the jury, not by the opinion of the street commissioner; and his failure to observe its dangerous condition, if in fact it existed and was apparent, is not a defense to the city. Goodfellow v. City of New York, 100 N. Y. 15.

It is true that the city is not an absolute insurer of the safety of its streets and bridges, but it does owe the public a duty in reference to the care of them. The law imposes upon municipal corporations the duty of guarding against such dangers as can or ought to be anticipated or foreseen in the exercise of reasonable prudence or care. The duty of inspecting the streets is as much a part of the duty of a municipal corporation as that of repairing the streets when such an inspection reveals a condition requiring repair; and, if it appears either that such corporation knew of the defect and neglected to repair it, or neglected to inspect and thus failed to know the condition and to make the repairs, there is negligence that will sustain a recovery. Smith v. City of New York, 17 App. Div. 438; Brewer v. City of New

York, 31 id. 247. The city does not fill the measure of its responsibility by acting simply when it has actual notice, but owes the public the duty of active vigilance. Pomfrey v. Village of Saratoga Springs, 104 N. Y. 459–465. As Judge Earl says in Todd v. City of Troy, 61 N. Y. 506–509: " It is the duty of the municipal authorities to exercise an active vigilance over the streets; to see that they are kept in a reasonably safe condition for public travel. They cannot fold their arms  *  *  *  and say they have no notice."

A municipal corporation is not always liable for accidents caused by slight defects in its streets or sidewalks, as, for instance, broken flagstones, depressions caused by pieces of stones being chipped out, ruts in flagging or pavement caused by heavy trucking — defects so slight as not to suggest to the mind of an ordinarily careful and prudent man that they were dangerous. Such defects might continue indefinitely and no accident occur, and to require the municipality to guard against them would not be practical.

The present case, however, presents no such situation. A bridge forming part of a public highway in a city is subjected to constant strain and wear   The planks upon it must inevitably wear out. At most they can last but a few years.

When a duty is imposed by law upon a public officer or municipal corporation of keeping a structure in repair, it involves the exercise of a reasonable degree of watchfulness in ascertaining the condition of such structure from time to time; and, where this is omitted, such officer or corporation is liable for damages resulting from dilapidation of the structure, which is an ordinary result of its use and which would have been disclosed by an examination. No notice of the defect is necessary in such case to fix the liability. McCarthy v. City of Syracuse, 46 N. Y. 194; Gravey v. City of New York, 117 App. Div. 773; Talcott v. City of New York, 58 id. 514; Schumacher v. City of New York, 166 N. Y. 103, 107. It is not necessary for the plaintiff to invoke the maxim, " *res ipsa loquitur,*" nor to consider whether the same is applicable.

It was for the jury to say, under all the circumstances, whether the city was negligent; and their finding in favor

of the plaintiff is conclusive. Dexter v. Village of Fulton, 86 Hun, 433, 436; Hart v. Hudson River Bridge Co., 80 N. Y. 622.

The plaintiff knew prior to the accident that at the place where it occurred the planks were getting worn, yet it does not appear that he knew of any hole or pocket in this plank or that the bridge was unsafe. He was proceeding carefully at the time of the accident, and it was fairly within the province of the jury to say whether any contributory negligence should be imputed to him.

The judgment should be affirmed, with costs to the respondent.

*Judgment affirmed, with costs.*