(155 App. Div. 184.)

LOBRAVICO v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. February 14, 1913.)

1. MUNICIPAL CORPORATIONS (§ 832*)—SEWERS—CARE REQUIRED.

A city was bound to use reasonable diligence to discover and remedy defects in sewers and gutters.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1782; Dec. Dig. § 832.*]

2. MUNICIPAL CORPORATIONS (§ 843*)—SEWERS—LIABILITY OF CITY.

Plaintiff sued for damages to his building from water which overflowed from a sewer which was exposed in excavations made by a street railway company under a permit from the city in changing its horse car line to an underground trolley system. The permit required that the company should, before beginning the work, submit for the city's approval plans for all proposed changes in sewers, and that such work should be under the supervision of inspectors subject to the department of water supply, though their salaries were to be paid by the company; and the permits further provided that the work should be under the supervision of inspectors paid by the company and appointed by the borough president, from whom they were to receive their instructions. *Held*, that the city was liable for the damages resulting from the negligent interference with the sewer; the work having been done under the actual direction of the inspectors appointed pursuant to the permit.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1788; Dec. Dig. § 843.*]

Ingraham, P. J., and Laughlin, J., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, New York County.

Action by Giovanni B. Lobravico against the City of New York. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and DOWLING, JJ.

Walter Carroll Low, of New York City, for appellant.
William E. C. Mayer, of Brooklyn, for respondent.

McLAUGHLIN, J.   In July, 1905, the Dry Dock, East Broadway & Battery Railroad Company, a corporation organized under chapter 512 of the Laws of 1860, was engaged under permits by the city in changing its horse car line in Grand street, in the city of New York, to an underground trolley system.   For that purpose it had, prior to the 10th of that month, dug a trench in Grand street several feet deep and several feet wide.   The plaintiff occupied a portion of a building at 60 Grand street, and the railroad company, in digging the trench opposite the building, exposed a large sewer and removed a portion of it, and dirt and stones in a large quantity were piled in the streets in such a way as to obstruct the gutters both to the east and west. On July 10, 1905, an unusually heavy rainstorm occurred, during which the trench became filled with water from the surface of the street, or the sewer, and a large amount of it either percolated through or overflowed and ran into the basement of the building occupied by the plaintiff, damaging a quantity of tobacco stored therein.   This action was brought to recover the damages sustained.   At the conclusion of the trial the learned justice refused to submit any question to the jury and dismissed the complaint.   From the judgment entered thereon plaintiff appeals.

I am of the opinion that the court erred in not submitting the case to the jury.   The work which the railroad company was doing was under permits issued by the city, which required that before entering upon the work it should submit, for the approval of the city, plans and specifications of all proposed changes in water pipes and sewers, and that all such work should be under the supervision of inspectors to be appointed by and subject to the department of water supply or the borough president, though their salaries were to be paid by the company.   The permits further provided that the entire operation, from the time the pavement was taken up until it was replaced, should be under the supervision of inspectors appointed by the borough president, from whom they were to receive their instructions, though their salaries were likewise to be paid by the railroad company.   It also appeared that such inspectors did actually enter upon their duties, and that for at least 10 days prior to the storm the sewer had been interfered with—a portion of it removed—and the gutters in the street obstructed by the piling therein of dirt and stone; and that the water which went into the plaintiff's basement was by reason of such obstruction.

[1] The city had provided the sewer and gutters for the drainage of surface water, and it was thereby bound to use reasonable dili-

gence to discover and remedy any defects therein. Nims v. Mayor, 59 N. Y. 500; McCarthy v. City of Syracuse, 46 N. Y. 194; Barton v. City of Syracuse, 36 N. Y. 54; Ebbets v. City of New York, 111 App. Div. 364, 97 N. Y. Supp. 833; Gravey v. City of New York, 117 App. Div. 773, 102 N. Y. Supp. 1010.

A case directly in point, as it seems to me, is Schumacher v. City of New York, 166 N. Y. 103, 59 N. E. 773. There, a trench was dug in the street pursuant to a permit issued under a statute which authorized a corporation to place pneumatic tubes of iron beneath the surface of public streets, and for that purpose to open any street or avenue upon obtaining the consent of the commissioner of public works. Chapter 400, Laws of 1874. The permit was granted upon certain conditions, quite similar to the ones here imposed. During a heavy rain, water collected in the trench, overflowed, and, by reason of the fact that the gutters were obstructed, went upon plaintiff's property, and did him damage, to recover for which the action was brought. At the trial the complaint was dismissed, but on appeal to this court it was reversed and a new trial ordered (40 App. Div. 320, 57 N. Y. Supp. 968), and on appeal to the Court of Appeals the order of this court was affirmed; the court saying:

"The damages to the property of the plaintiffs were caused by the obstruction of the culvert and gutter, the construction of the trench and leaving it unprotected, in such a situation with reference to the culvert and gutter that the water from a heavy rain would flood the culvert, enter the trench, and percolate therefrom into the basements of the adjacent buildings. The city had notice of the necessities of the locality with reference to surface drainage, for it created them. It knew the danger to be apprehended from an unusual rainfall in case the culvert and gutter should become obstructed, and if, on the occasion in question, it knew, or should have known, that the culvert was closed entirely, as well as the other facts as they then existed, yet took no care to prevent injury to neighboring property, it was liable for damages naturally resulting from its neglect. * * * It is not excused because the storm was heavy and unexpected, as its care should include preparation, after notice of the obstruction, express or implied, for such storms as may reasonably be foreseen, and which, judging from experience, are liable to happen at any time in this climate. It made no attempt to open the gutter, uncover the culvert, protect the trench, or provide for the water."

[2] In the present case the situation already described had existed for at least 10 days, upon a street much traveled. The trench, it must be assumed, was dug and the sewer interfered with under the supervision of inspectors appointed by the officials of the city. This was the condition of the permits, and the inspectors actually entered upon the performance of their duties. While it does not expressly appear that they saw the situation as it existed at the time the storm occurred, nevertheless the jury could have found, in the absence of evidence to the contrary, that they did actually see it and have knowledge of the danger, because it was their duty to see it and either to remedy or report it to the proper officials.

It is suggested that the inspectors did not represent the city, but this contention was answered adversely in the Schumacher Case.

It is also urged on behalf of the respondent that the decision in the Schumacher Case does not apply to the present case; the argument

being that the permit in that case was granted as a favor, while here, as a matter of duty. The distinction urged is more fanciful than real. The statute giving to the railroad company the right to open the streets did not deprive or take from the city the right to exercise control over the manner in which the work was to be performed. This right was recognized by the railroad company when it applied for and obtained the permits, and they expressly provided that:

"No materials shall be piled or placed on any part of the roadway of the highways upon which the tracks are being constructed and the gutters shall always be kept unobstructed and open for proper drainage.

"All the work from the time the pavement is taken up or the excavation is commenced to the time the pavement is relaid and the railway completed shall be under the supervision of inspectors who will be appointed by the president of the borough."

The terms were accepted with these conditions, and the city did retain control of the manner in which the work was to be performed, and its own inspectors were acting for it in this respect. As was said by this court in the Schumacher Case:

"The work connected with this trench was being done under a permit of the city and under terms and conditions which gave it the control of essential details of the manner in which the work was to be performed. It has been frequently held that when a municipal corporation enters into a contract with a third party to do work, but reserves to itself the manner in which that work shall be done, it becomes liable for negligence in the performance of that work."

From the testimony the jury could have found there was negligence in the manner in which the work here was performed. If I am correct about this, then it follows the court erred in not submitting the case to the jury.

The judgment appealed from, therefore, is reversed, and a new trial ordered, with costs to appellant to abide event.

CLARKE and DOWLING, JJ., concur.

INGRAHAM, P. J. (dissenting). Under the authority of chapter 512, Laws of 1860, the Dry Dock, East Broadway & Battery Railroad Company was authorized to establish a street railroad in Grand street and other streets in the city of New York, and the company, under the authority therein granted, established and maintained such a railroad using horse power. This statute under which the railroad was constructed provided that:

"The use of said streets and avenues for the purposes of said railroad, as herein authorized, shall be considered a public use consistent with the uses for which the mayor, aldermen and commonalty of said city hold said streets and avenues." Sec. 3.

Section 4 provided:

"It is hereby made the duty of the said mayor, common council and other officers to do such acts, within their respective departments, as may be needful to promote the construction and protect the operation of said railroad, as provided in this law. Any act or thing done in violation hereof shall be inoperative and void."

In 1897 this railroad company applied to the Board of Railroad Commissioners for permission to change the motive power from horse power to an underground current of electricity. This application resulted in an order of the Board of Railroad Commissioners, authorizing such change of motive power in Grand street, subject to the lawful requirements of the local authorities. Under the act and the order of the Board of Railroad Commissioners, the railroad company was authorized to make the necessary excavations, to construct a subway required in accordance with the permission of the Board of Railroad Commissioners. The municipality had no discretion in the matter. The consent of the city was not required before the railroad company could make the necessary excavations, and, if the city had refused to issue a permit to disturb the pavement, the issue of such permit could have been compelled by mandamus. The railroad company applied for a permit, and the public authorities, as they were bound to do, granted the permit on certain conditions to protect as far as possible the rights of the public and the abutting owners; but, as the railroad company was authorized by the Legislature and the Board of Railroad Commissioners to make the excavations necessary to complete the structure, the act of the railroad company in disturbing the streets and making the excavations was not an act under any permit from the local authorities, and it seems to me clear that, for any negligence in the method of construction, the railroad company and not the city of New York was responsible.

The railroad company proceeded under this authority to excavate in Grand street, in front of the plaintiff's premises, and, in making the excavation, it disturbed one of the sewers constructed by the city so that a portion of it was uncovered. The plaintiff's evidence is that that condition had existed for two weeks prior to July 10, 1905. There is some evidence that there were piles of dirt from the excavations in the street, but I can find no evidence that the gutters were seriously obstructed for any time before the flooding of the plaintiff's cellar, or that any obstruction in the gutters caused such flooding. On July 10, 1905, there was a remarkable fall of rain, commencing at 2:48 and ending at 4:29 p. m., during which time 2.56 inches of water fell. The officer in charge of the local office of the United States Weather Bureau at New York testified that, with the one possible exception for which the record is not complete, the rainfall on July 10, 1905, was the greatest that ever occurred since the records have been kept in 1871. The exception was on October 4, 1877, when 3.96 inches of water fell within four hours. Here 2.56 inches of water fell within something less than two hours. The result of this rainfall was that the water filled the excavated trench, overflowed onto the street, over the sidewalk, and into the plaintiff's cellar, and occasioned the damages for which this action is brought.

What seems to me to be clearly established by the plaintiff's evidence is that the cause of the water entering the plaintiff's premises was not any obstruction of gutters or culverts, which the municipal corporation was obliged to keep in proper condition, but the excessive quantity of rain coupled with the fact that the street in front of the

plaintiff's premises had been disturbed by this excavation and in consequence of this whole situation the water, instead of flowing down the street, overflowed into the plaintiff's premises. For this condition of the street the defendant was not responsible. It gave the railroad company no authority to make the excavation; it had no power to control the railroad company in its method of constructing its railroad. The city officials did their best to impose conditions upon the railroad company, which would protect the property, but it had no power to stop the railroad company in its work or prescribe how the work should be done. The railroad company took possession of the street and made the necessary excavations to construct its work, and was engaged in such construction when this extraordinary fall of rain filled up its trenches and overflowed the plaintiff's premises. I can see nothing, that the defendant had the power to do or could have done, which would have prevented this accident, and, if no act of the defendant or its officials could have prevented the accident, there is certainly no basis for charging the defendant with negligence because the accident happened.

The prevailing opinion seems to rely upon Schumacher v. City of New York, 166 N. Y. 103, 59 N. E. 773; but the facts upon which it was held that there was a question for the jury in that action clearly distinguish it from this. By chapter 400, Laws of 1874, certain persons named were authorized to lay down and maintain certain tubes of iron underground, and, for the purpose of such construction underground, were given the right to open any street or avenue in any incorporated town or city, by and with the consent of the corporate authorities of such town or city, excepting in the city of New York, where such consent should be obtained from the commissioner of public works. That statute made the consent of the city necessary to the use of the streets and avenues for this purpose, and in pursuance of that statute the commissioner of public works issued a permit. Acting under that permit, the excavations were made, and the materials taken therefrom obstructed the culverts and gutters in front of the plaintiff's building, leaving the trench unprotected in such a situation that the water from a heavy rain would flood the corner, enter the trench, and percolate therefrom into the basements of the adjacent buildings. It was held that the city had notice of the necessities of the locality with reference to surface drainage, for it created them. It knew the danger to be apprehended from an unusual rainfall in case the culvert and gutter should become obstructed, and if, on the occasion in question, it knew or should have known that the culvert was closed entirely, as well as the other facts as they then existed, yet took no care to prevent injury to neighboring property, it was liable for damages naturally resulting from its neglect. Having provided gutters, culverts, and sewers for the surface drainage, it was bound to the use of reasonable diligence to discover and remedy defects therein. Here the gutters, sewers, and culverts were sufficient for ordinary purposes, and, except as interfered with by the railroad company under the paramount authority of the state, would have been sufficient. It was not the obstruction of the gutters or culvert that caused the in-

jury, but the excavations by the railroad company in the streets and its interference thereby with city sewers, which, in so far as this record shows, was an interference over which the city had no control and which the city could not have prevented.

. I think therefore the trial judge was correct in his determination that upon the evidence there was no question for the jury, and that the complaint was properly dismissed.

LAUGHLIN, J., concurs.