Frederick Backer, J.
This case is predicated in negligence. Plaintiffs’ complaint is framed against the six named defendants so as to cast liability upon each of them by reason of alleged respective negligent acts or omissions which caused and/or contributed to the accident resulting in plaintiffs’ injuries and consequent damages.
The trial, before this court and a jury, culminated in a verdict for plaintiff Ella Sobel for $60,000 and in favor of husband Morris Sobel for the sum of $10,000. The verdict was rendered against the defendants, the City of New York, Consolidated Telegraph and Electrical Subway Company (hereinafter referred to as Con Tel), and Slattery Bock Corporation (hereinafter referred to as Slattery). The complaint against W. J. Fitzgerald Paving Co., Inc., was dismissed by the court at the close of plaintiffs’ case. During the trial plaintiffs discontinued their causes of action against Consolidated Edison Company of New York, Inc., and Slattery Contracting Co., Inc. Thereupon the City of New York discontinued its cross complaint against these named defendants and also against W. J. Fitzgerald Paving Co., Inc.
With the consent of all parties the court reserved unto itself determination of the liabilities of the respective defendants as pleaded in their several cross complaints. The city has a cross complaint over against Con Tel and Slattery upon the ground that any damages sustained by plaintiffs were due solely to the active negligence of the said defendants without any negligence on the part of the city contributing thereto. The city further eross-complains against Con Tel, under its agreement to save the city free and harmless from damages, by reason of its permit from the city to make certain street excavations.
Con Tel cross-complains against Slattery Bock Corporation and W. J. Fitzgerald Paving Co., Inc., by reason of indemnity agreements which it claims hold Con Tel harmless from any liability for injury or damage arising out of the performance of their work and on the further ground that any verdict recovered by plaintiffs would be as a result of the active, primary and affirmative negligence of Slattery and Fitzgerald, since any negligence claimed on the part of Con Tel would only be passive and secondary.
The evidence established that plaintiff Ella Sobel was caused to fall on May 18,1956 over cobblestones in the street which had been raised five or six inches above the level of the roadway. There is evidence that the condition existed for' about a month prior to the date of the accident. Bebutting this, it is argued *28 that the condition could not have existed for a period of a month because there is evidence that Con Tel, on or about May 1,1956, notified Fitzgerald that the trench was ready for permanent repaving, and further that the policeman, who responded to the accident, testified that, while the blocks were raised when he arrived at the scene of the accident, he had never noticed such a condition before the day of the accident although he passed the location frequently. The city argues, therefore, that it had no actual notice of the alleged condition, that any action or lack of action on its part was at best merely passive and, moreover, that under the permit issued to Con Tel as well as under the provisions of the Administrative Code of the City of New York (ch. 4, § 82d-4.0), both it and Slattery Bock Corporation were obligated to indemnify the city.
As to the city’s contentions in respect of the Administrative Code provisions, I am persuaded that they are untenable since they are not germane to the issues raised by the cross complaint, nor do they spell out any indemnity to the city. They merely impose upon a permittee certain standards of care and responsibility to the public. Moreover, the city’s cross complaint did not plead the provisions of the code nor did it therein assert any claim for benefit under such applicable provisions. No motion was made by the city at the trial to conform its pleadings to the proof. I, therefore, conclude that the code provisions may not now be interposed or considered under the city’s cross complaint.
Upon study of the cross complaints and briefs of the respective defendants it may well be noted that the legal arguments so ably presented herein have been perennially traversed before our trial and appellate courts. Much has been written upon the subject of indemnity over between codefendants under situations involving active or passive negligence, and also of interpretation of contracts which provide for respective liabilities and indemnification. In the last analysis, it is not the law which is difficult of understanding or application but rather the application of the law to the ever-changing and diversified factual situations presented to the courts. There is no set pattern to which the law may undeviatingly be applied in all eases. The facts differing in variegated situations, so must the application of legal principles mould to the facts. This is pointedly obvious by the decisional law in these types of cases and by the very recent determination by our Appellate Division (First Dept.) in the ease of Jordan v. City of New York (3 A D 2d 507, affd. 5 N Y 2d 723), wherein a very illuminating and persuasive *29 dissenting opinion was stated by (now) Presiding Justice Boteiet (concurred in by Associate Justice Breitel) . However much we are persuaded by the logic of the dissent, the Court of Appeals nevertheless affirmed, without opinion, the majority determination. In Seiden v. Savings & Loan Assn. of Sunnyside (10 Misc 2d 720 [City Ct., Queens County]), Judge Shapiro of that court rendered a very excellent review and statement of the law applicable in these types of cases. He well sketched the difficulties of applying the legal principles to the variegated facts presented in different cases. It bears repetition here in light of the same point I make. Where responsibility and indemnification are sought over, by cross complaints, the distinction between active or passive negligence becomes a criteria. Judge Shapiro states (pp. 725-726): “ The distinction in such eases is sometimes very finely drawn, and the courts upon occasion have loosely used the words ‘ passive negligence ’ and ‘ active negligence ’ without defining their precise meaning and application to the facts before them. That failure has led Professors John Y. Thornton, Associate Professor of Law, New York University School of Law and Harold F. McNiece, Associate Dean and Professor of Law at St. John’s University School of Law, to say in the New York University Law Review of December, 1957, which is a 1957 Survey of New York Law:
‘ When the judges of the appellate courts disagree so violently in these indemnity cases, a trial judge may well be pardoned if he too guesses wrong now and then. Indeed, in deciding what negligence is ‘ active ’ and what is ‘ passive ’ a trial judge will receive almost as much assistance from tossing a coin as he will from pondering the opinions of the appellate tribunals’ (p. 1471). And they pointed out that: ‘ In another recent indemnity case, Burke v. City of New York, 2 N. Y. 2d 90, 138 N. E. 2d 332 (1956), the Court of Appeals, in affirming a judgment of a divided appellate division, broke out in a rash of opinions. Three judges concurred in the Court’s opinion, one concurred in a separate opinion, and three dissented in two separate dissenting opinions ’ (p. 1471) ”.
Against this background of present applicable law, we now come to the situation in the case at bar. Plaintiff Ella Sobel fell on cobblestones which had been raised five or six inches above the level of the roadway. By its verdict in her favor the jury found the defendants responsible for the condition which caused the accident. With this finding the court is wholly in accord. Con Tel obtained the permit to open the street and Slattery Bock actually excavated the street as the agent of and under the said. *30 permit issued to Con Tel. They both were responsible as active participants in the negligent performance of the work or failure to comply with conditions which ultimately led to a situation which caused the accident herein. (Doyle v. Union Ry. Co. of City of N. Y., 276 N. Y. 453.) As for the city, I conclude, upon all the evidence, that it was an active participant in the situation which was the proximate cause of plaintiff’s injury. Under the facts herein disclosed the city, in giving out the permit and work to others, did not thereupon, ipso facto, absolve itself from all responsibility under all circumstances. The evidence was conclusive that the condition (raised blocks) which caused plaintiff’s injuries existed for about a month after the date the excavation in the street had been backfilled and the temporary paving completed. This backfill and temporary paving was completed on April 20,1956. At that time Slattery was required to notify Con Tel, in writing, that the condition of the trench was satisfactory for restoration of permanent pavement. It failed to do so. The condition thus remained until the accident on May 18. During this period of time unquestionably many police officers passed the scene of the accident several times daily. The condition of the blocks and street as described must or should have been observed by them. Since notice to a police officer is notice to a municipality (Kunz v. City of Troy, 104 N. Y. 344) the city is held equally responsible for the existing condition. It may not give license to open a street without the concurrent responsibility it owes to the public to take proper precautions against the abuse of such permission or license (Schumacher v. City of New York, 166 N. Y. 103). There was a sufficient period of time’ from the date of the refilling, on April 20,1956, to the date of the accident, May 18, 1956, within which the city should have or could have checked the condition of the street whereon it had granted a license for excavating work. For these reasons I concur with the jury’s verdict holding the city equally responsible.
I now consider the cross complaints. The city’s cross complaint against Con Tel and Slattery is without merit and is, therefore, dismissed. Its cross complaint is predicated upon two theories: the first, that Con Tel by reason of the permit1 ‘ agreed to and with the City of New York to save the City of New York free and harmless from any and all damages ”. The second is evidently bottomed upon the theory of common-law indemnity between active and passive tort-feasors. As to the first theory, study of the permit convinces me that under no circumstances may the permit be construed as an agreement for indemnification between the City and Con Tel. It was merely a written per *31 mission granted by the city to the permittee and obligates such person to be “ answerable for any damage which may be occasioned to persons, * * * by reason of carelessness in any manner connected with the work”. Nowhere in the language used is any requirement of indemnification stated either expressly or impliedly. Considering the city’s second theory, the evidence established that the city had or should have had actual notice of the defect in the street, and, having granted the permit for the opening of the street, it had a continuing and nondelegable duty to check the permittee’s work in the interests of public safety (Boylhart v. Di Marco & Reimann, Inc., 270 N. Y. 217,220). The holding in Wrigley v. City of Watervliet, (165 App. Div. 740) is applicable here. It is there stated (p. 741): “ The purpose of requiring a license or permit for opening a street is to enable the municipality to properly discharge its duty of maintaining the streets in a safe condition for use; it is for the purpose of enabling the city to know when its streets are opened, and thus to take the proper precautions to see that they are opened only when necessary, and that they are kept open only so long as the necessity continues, and that they are properly protected when so necessarily opened. It was clearly for the jury to determine whether the city, knowing of this permission to open the highway, had taken the proper steps to know that it was not left in a dangerous condition. It had it in its power, in granting the permission, to limit the time when the work might be done, and to require a bond to protect itself, and the case is differently presented than would be the case if the street had been obstructed only for a matter of thirty-six hours by some third person without the knowledge of the municipality. In other words, the highway being opened by permission of the municipality, it was much the same as though the municipality itself had opened the trench and left it without proper guarding, and the jury had a right to find that it had notice of the menace of the existing condition to those who were lawfully using the highway.”
In the instant case, the backfill and temporary paving of the excavation in the street was completed on April 20,1956. At that time Con Tel agreed that Slattery had completed its work. The only proof as to its condition at that time was that the excavation was properly backfilled and the cobblestones were placed level with the surrounding street surface. The plaintiff’s accident occurred on May 18, 1956.
Thus, the city being actively negligent by reason of its failure to perform its nondelegable duty in the circumstances presented, and there being no indemnity agreement with Slattery, its cross *32 complaint predicated upon common-law indemnity between active and passive tort-feasors must be dismissed.
The cross complaint of Con Tel against Slattery again brings up the applicable legal principles of indemnification. Under its contract with Con Tel, Slattery agreed to excavate, backfill and cover the excavation with temporary pavement. It agreed to maintain the trenches and openings, after they have been back-filled or been backfilled and surfaced with temporary pavement, until 10 days after notification, in writing, that the condition of the trench is satisfactory for permanent pavement. While eoneededly no notice in writing was sent, the course of conduct between them was such that upon the determination by the representative of Con Tel that the work was completed, and the signing by him of the plan to that effect, Con Tel sent notice to its paving contractor that the work was ready for permanent paving. This notice was sent by Con Tel on May 1, 1956. The evidence also established that a representative of Con Tel was present during the backfilling operation and had approved same. The accident occurred May 18,1956. Obviously, therefore, Con Tel had actual notice of the condition existing at the situs of the accident and must be held to have been an active tort-feasor in the circumstances. Con Tel, therefore, can recover over against Slattery only if the contract between them affirmatively indemnifies it against its own active negligence or if the intent to indemnify it can be clearly implied from the contract and the surrounding facts. However, in the latter instance, such a contract will not be construed to indemnify a party against his active negligence unless such intention is expressed in unequivocal terms (Thompson-Starrett Co. v. Otis Elevator Co., 271 N. Y. 36). This, therefore, brings us to a consideration of the recently decided Jordan case (3 A D 2d 507, affd. 5 N Y 2d 723, supra) which, I am of the opinion, is determative of the issues here. I find the language of the indemnity agreement in the contract between Con Tel and Slattery similar to that in the case of Semanchuck v. Fifth Ave. 37th St. Corp. (290 N. Y. 412), which is discussed in the Jordan case. The language here reads as follows: “ The contractor shall indemnify and save harmless the company from and against any and all liability arising from injury to persons or property occasioned wholly or in part by any act or omission of the contractor, its servants, agents or employees ”.
The language of the agreement in the Semanchuck case provides for the assumption by the contractor of “ the obligation to save the Owner harmless and indemnify him from * * * *33 liability * * * by reason of any injury to any person * * * resulting- from any action or operation under this contract. ’ ’
The language used in either of these two agreements does not indicate a clear intent to indemnify one against his own negligence as was the language of the agreement in the Jordan case which was so broad and comprehensive, that the contract pattern and words used were manifestly such as to unequivocally indicate an intent to indemnify the city against its own negligence (Jordan v. City of New York, 3 A D 2d 507, 512, supra). Accordingly, the cross complaint of Con Tel against Slattery must be dismissed.
Lastly, we now come to the cross complaint of Con Tel against W. J. Fitzgerald Paving Co., Inc. While plaintiffs’ complaint against this defendant was dismissed there, nevertheless, remains Con Tel’s right to cross-complain over against Fitzgerald under their contract of indemnification. The indemnity provision in this contract is contained in paragraph 8 of the specifications, and paragraph 25 of the general conditions. The paving order was issued or dated May 1, 1956. Fitzgerald admitted receipt thereof on May 3 or 4, 1956. Under specification 3, Fitzgerald assumed responsibility for maintenance of the opening involved as provided in specification 8 and also agreed to dress up temporary pavement. It specifically agreed to complete pavement restoration within five days from receipt of the paving* under which it actually received on May 3 or 4. It did not do so. The accident occurred May 18. Fitzgerald should have complied with specification 8 and paragraph 4 of the general conditions. Not having- done so, it must respond in damages for its negligent omission. The cross complaint of Con Tel against Fitzgerald is granted.
Settle order accordingly upon which judgment may be entered consistent with this determination which constitutes the decision oí the court in accordance with the provisions of section 440 of the Civil Practice Act. All motions heretofore reserved are now decided in accordance with this opinion.